Clark v. Thornburg.

Walter Wolcott and Donzella Burke, *née* Wolcott; otherwise it is adhered to.

JUDGMENT ACCORDINGLY.

---

REBECCA H. CLARK v. JOHN D. THORNBURG.

FILED DECEMBER 17, 1902.   No. 11,156.

Section: QUARTER: CORNER: LOCATION: SURVEY: WITNESS: EVIDENCE: MEASUREMENTS: FIELD NOTES: GOVERNMENT SURVEY. If the location of section and quarter section corners by the original government survey can be ascertained, they are not to be moved, but will control all other surveys; but when the marks of the government survey have been obliterated, and the location of the corners by that survey can not be established by witnesses who know where they were located, resort must be had to other evidence, and in the absence of any other proof, the measurements indicated by the field notes of the government survey must control.

2. Division Line: GOVERNMENT SURVEY: ACQUIESCENCE: LIMITATION: QUESTION OF FACT FOR JURY. Where a division line, supposed to be the true line established by the government survey, has been acquiesced in by the parties interested for more than ten years, it is conclusive of the location of the boundary line; but whether such line was agreed upon, or has been acquiesced in as the true division line, is a question of fact to be submitted to the jury in a proper case.

ERROR from the district court for Gage county. Action in ejectment. Tried below before LETTON, J. Judgment for defendant. Plaintiff brings error. *Affirmed.*

*Albert H. Babcock,* for plaintiff in error.

*Alfred Hazlett* and *Fulton Jack, contra.*

SEDGWICK, J.

This action in ejectment was begun in the district court for Gage county. The trial resulted in a verdict and judgment for defendant, and the plaintiff brings the case here upon petition in error. The controversy involves the location of the division line between the farms of the re-

spective parties. The principal contentions of the plaintiff appear to be: First, that the verdict of the jury is contrary to the evidence as to the location of the true line; and, second, that more than ten years before the commencement of this action the parties agreed upon a line between them, and have ever since recognized the line so agreed upon as the true division line until a short time before the commencement of this action, when the defendant removed the fence from that line and made claim to the land in dispute.

1. As to the first proposition of the plaintiff, it is sufficient to say that there is a large volume of evidence as to the true location of the line according to the original survey, and that evidence seems to us to preponderate in favor of the finding of the jury. But, however that may be regarded, it certainly is not so clearly against the verdict as to require the judgment to be reversed on that account. The parties had occupied these respective lands for about thirty years when this action was begun. During that time various surveys were made by different surveyors apparently more or less qualified, and of these surveys, the ones relied upon by the plaintiff are principally predicated upon the location of a certain red-granite stone, or "nigger-head," as it is called in the evidence, supposed by them to mark the quarter corner on the east side of the section in which their lands lie. The field notes of the government survey recite that this quarter corner is marked by a limestone, 15x12x3 inches in size, and a great preponderance of the evidence shows that the stone relied upon in the surveys referred to did not conform in any respect to the description of the stone in the field notes of the government survey. It is shown by careful measurements, and is substantially conceded, that the red-granite stone referred to was so far from the point where the true monument should be located according to the measures indicated by the field notes of the original survey as to greatly discredit the claim that it is the monument placed there by the government surveyors. The

evidence clearly shows that from the time that the question of the true line between these parties was seriously discussed it was continuously maintained upon the one side, and more or less debated upon the other, that this red-granite stone was not upon the true line, and was never placed for the purpose of marking the line. This question was involved in the case of *Bartram v. Sherman*, 49 Nebr., 181. Of course, if the location of the corners by the original government survey can be ascertained they are not to be moved, but will control all other surveys; but when the marks of the government survey have been obliterated, and the location of the corners by that survey can not be established by witnesses who know where they were located, resort must be had to other evidence, and in the absence of any other proof, the measurements indicated by the field notes of the government survey must control. The circumstance that, as in this case, the measurements required by the field notes would result in an equal division of the land between the two quarter sections, strengthens the force of the field notes as evidence of the true location of the line. We think that the verdict of the jury, so far as it depends upon the location of the true line, as established by the government survey, is amply supported by the evidence.

2. The second principal ground of the plaintiff's contention presents a more serious question. In 1882 the plaintiff and defendant united in building a division fence between their respective farms. It is true that as to whether this division fence was placed by agreement between the parties that it should be and remain the permanent boundary line the evidence is conflicting, and the finding of the jury upon that point is well supported by the evidence. But this fence remained continuously as placed in 1882 until the defendant, upon his own motion and without consent of the plaintiff, removed it, in 1898, and took possession of the land in dispute, which had been separated from his own by the fence in question. "Where a corner supposed to have been established by the

government in the surveys of public lands has been acquiesced in by adjoining owners of such land for nearly ten years, and improvements made and the land broken up to the line thus established, there is a presumption in favor of such corner being the true one, which can only be overcome by clear proof that it was not established by the government." *Coy v. Miller,* 31 Nebr., 348. When a line so established is acquiesced in by the parties for a period equal to that fixed by the statute for gaining title by adverse possession, it is conclusive of the location of the boundary line. 2 Herman, Estoppel, sec. 1129.

It was earnestly contended by the defendant that at the time this fence was built the true location of the line was absolutely uncertain, and that they had no means at hand to settle the dispute; that it was contemplated by both parties that at some time in the future the true line would be located, and the fence in question was built as a temporary matter, and it was never intended by either party nor acquiesced in by them as a true line. We do not feel satisfied that the verdict of the jury is so clearly unsupported by the evidence on this point as to require its reversal.

There being no sufficient evidence of an agreement at the time that this fence should mark the boundary line, the circumstances tending to show how it was afterwards regarded by the parties are important. It does not appear that the plaintiff regarded the dispute as to the true location of the division line settled by the location and building of the fence in question. On the other hand, the plaintiff's husband, who has actively managed the whole controversy for her, attempted to exercise rights of ownership on defendant's side of the line on which the fence was placed, insisting that the fence did not mark the true line, and continued this conduct until about the time that the result of litigation which involved some of the questions in dispute demonstrated that there was a possibility that this line was more favorable to plaintiff than the true line would be. The defendant testified directly

that no agreement was made that this fence should be the permanent line.    He says that before building the fence he "told Mr. Clark that there was a dispute about that line and when we found the true line, why, then we could put our fence where it belonged."  Defendant's two sons testified to facts which, if believed, tend to show that neither the plaintiff nor the defendant recognized this fence as marking the true boundary line.    These witnesses were corroborated by other witnesses, who appeared to be disinterested, and we find nothing in the record to show that the jury was not justified in believing this evidence. We do not think that the verdict of the jury is so clearly unsupported by the evidence at this point as to require a reversal.

The foregoing considerations also dispose of the plaintiff's claim of title by adverse possession.    If the understanding between the parties was that the location of the fence was temporary, and that it should be removed when the true line was finally established, plaintiff's occupation of the land in question would be permissive, and would not constitute such adverse possession as could ripen into a perfect title.

The plaintiff does not seem to be in a position to complain of references made during the trial of this case to the record and controversy in the case of *Bartram v. Sherman,* above referred to.    Of course it would not be proper to contend before the jury that the decision of the former case was binding upon the parties to this litigation.    In both cases, the reliability of the red-granite stone referred to as a government monument was involved, and some of the witnesses upon that trial were also witnesses in this case, and both parties to this litigation seem to have referred freely to the former trial.    But it appears that whenever the attention of the trial court was called to attempts to violate the rule in this respect, prompt rulings of the court protected the rights of the parties in that regard.

In instruction No. 6, given by the court on its own

52

motion, the jury was told: "If you find from the evidence that the possession and occupancy of the land in dispute by the plaintiff while held by her was broken or interrupted by the defendant, claiming title thereto, with the plaintiff's knowledge of such breach of possession, or interruption, then the ten years would not begin to run until the time of such interruption, and you must determine from the evidence whether any such entry and breach of possession took place. This applies only to the question of title by adverse possession." And it is insisted by the plaintiff that "this instruction does not apply to any testimony in the case." The defendant testified that in 1891 he caused a survey of this land to be made, and for that purpose went with the surveyor upon the land and ascertained the line in about the location he now claims it to be, and the surveyor marked the line with stakes placed along the line, and that the plaintiff knew of this survey at the time, and knew that the defendant claimed the land to the line so marked, and made no objection thereto. If the jury believed this evidence, and also found that there was no agreement between the parties that this fence should mark the permanent division line, but on the other hand, it was regarded by both parties as a temporary fence, and not limiting the rights of either party, then the jury would be justified in finding that the possession and occupancy of the plaintiff of this particular land in dispute was not so unbroken and continuous as would establish the plaintiff's title by adverse possession.

It is also complained that the instructions of the court required plaintiff to establish her case by a "fair" preponderance of the evidence. It is true that a preponderance only is required, and any qualifying words that may be used seem rather to cloud the issue than to clarify it, but it is not necessarily prejudicial error to use the word "fair" in this connection. *Altschuler v. Coburn*, 38 Nebr., 881. It is not apparent that the rights of the plaintiff were prejudiced thereby in this case.

Plaintiff complains of the refusal of the court to give

instruction No. 7, requested by the plaintiff; but this instruction seems to be embodied substantially in instruction No. 4 given by the court on its own motion. There are a number of other rulings of the court which are complained of by the plaintiff in error, but as these questions are not argued to any considerable extent in the plaintiff's brief, and upon examination we are unable to find any error therein, it is unnecessary to further extend this discussion.

We find no error in the record requiring a reversal of the judgment, and it is therefore

AFFIRMED.