PARSONS CONSTRUCTION COMPANY, APPELLEE, V. SANFORD R. GIFFORD, APPELLANT: CONANT HOTEL COMPANY ET AL., APPELLEES.

FILED SEPTEMBER 20, 1935. No. 29128.

*Will H. Thompson* and *Yale C. Holland*, for appellant.

*King & Haggart, Weaver & Giller, Gaines, McGilton, McLaughlin & Gaines, Wear, Boland & Nye, Brome & Thomas* and *James J. Fitzgerald, contra.*

Heard before ROSE, GOOD, EBERLY, DAY, PAINE and CARTER, JJ., and THOMSEN, District Judge.

DAY, J.

This was a suit for the foreclosure of a mechanic's lien by a subcontractor. The decree denied foreclosure and canceled the lien. Thereafter, the case proceeded as one for damages with the owner of the premises, the general contractor, subcontractors, lessee of premises, and the bonding company litigating the issues between them. In 1929 the Benson & Garrett Company conceived the idea of placing four additional stories on top of the Sanford Hotel building owned by Dr. Harold Gifford. They consulted with the Parsons Construction Company and John Latenser & Sons, architects. They negotiated a lease with the Conant Hotel Company, tenant in the building, for the additional space. The scheme was presented to the owner who accepted the proposal in October, 1929. The substance of the arrangement was that the Conant Hotel Company had leased the additional space at an annual net rental of $8,000 a year and had agreed to advance $26,000 toward the cost, to be repaid out of the rental; that Benson & Garrett was to get a new loan for $210,000 which would completely finance the project and pay off the existing mortgage on the premises; that Benson & Garrett was to pay all the architect fees and incidental expenses and post

a bond guaranteeing complete satisfaction to all concerned; that the time to complete the work was estimated at five months. Thereafter, on November 20, 1929, Benson & Garrett entered into a contract with the plaintiff, Parsons Construction Company, as principal subcontractor, to erect the addition in accordance with the agreement with the owner and the drawing and specifications furnished by John Latenser & Sons, architects. On November 28, 1929, Dr. Gifford died, before the loan was procured and before any work had been done on the contract. It had become impossible to secure the loan, but one was secured for $150,000 which was sufficient to pay the existing mortgage.

As a result of many negotiations between the executors of the estate of Gifford and the Benson & Garrett Company, a new contract was executed, restating the agreement for building the addition which was approved by the county court. It provided in substance that Benson & Garrett should be accountable for the performance of the contract and would build the addition and deliver it fully completed and free of all liens or claims arising in any manner from the construction; that Benson & Garrett warranted the plans and specifications were sufficient for the intended purpose and satisfactory to the executors and the Conant Hotel Company; that the risk of said building until completed and accepted by the executors and Conant should be that of Benson & Garrett; that the building should be completed by January 15, 1931. The Metropolitan Casualty Insurance Company executed its bond in the sum of $75,000, conditioned upon the performance of the contract by Benson & Garrett. Benson & Garrett contracted with Parsons Construction Company, B. Grunwald, Inc., and Harry Binder as subcontractors. Construction was commenced under these contracts and concrete work, columns and floors for two stories were poured and, upon estimate of architects, $5,872.31 was paid to Benson & Garrett and by them paid to the architects and Parsons Construction Company. Later, when the forms were re-

moved from the concrete work, defects appeared which caused the work to be condemned by the architects. Considerable controversy arose between Benson & Garrett, the architects, and Parsons Construction Company about this work, which was finally torn down and removed under an agreement of November 18, 1930, between Benson & Garrett and Parsons Construction Company, that the responsibility for the defective work was to be determined later. The concrete work was torn down in December, 1930, and immediately an argument ensued relative to the sufficiency of the plans and specifications. Tests were made with haydite aggregate concrete of which the building was to be constructed. On January 30, 1931, an extension of time was granted to August 15, 1931, to complete the work. From that time until May 23, 1931, Parsons Construction Company was refusing to proceed with the work on the ground that the plans and specifications were insufficient and impractical. But, on May 23, 1931, Parsons Construction Company agreed to proceed with the construction. On May 27, 1931, the executors ordered Benson & Garrett and Parsons Construction Company to remove their material and equipment from the building. Thus far, it has been intended merely to narrate the history from the beginning of the transaction giving rise to this litigation. An abstract of the pleadings seems necessary to an understanding of the issues presented and tried in the district court.

This suit was tried upon the amended petition of the plaintiff filed December 16, 1931, alleging the contract between Benson & Garrett and Gifford and between Benson & Garrett and plaintiff. It was alleged that the Conant Hotel Company was the lessee of the building to be constructed; that the plaintiff was to do certain construction work according to the specifications of the architect for a profit of $4,000; that the building was to be of reinforced haydite concrete construction; that on its first cause of action it is entitled to recover for labor and materials furnished or purchased for said addition $14,013.70, less

$3,482.64 which has been paid, or $10,531.06; that on its second cause of action it is entitled to recover $783.83 for extra labor and material furnished at the special instance and request of Gifford; that it is entitled to recover on its third cause of action $4,000 as its profit on said contract; that it was ready, willing and able to construct the building according to the plans and specifications furnished by the defendant and the building code of the city of Omaha, but that on the 27th day of May, 1931, without justification, Gifford canceled the contract.

Gifford in his answer and cross-petition admits the contract with Benson & Garrett company; the contract between Benson & Garrett and Parsons Construction Company, the lease of Gifford with Conant Hotel Company, and that B. Grunwald, Inc., claims lien on the premises, and denies other allegations. Gifford then alleges that Benson & Garrett had procured plans and specifications for the additional stories and warranted the plans and specifications were sufficient for the intended purpose and that the building would be completed to the satisfaction of Gifford. This answer alleges and sets out provisions of the contract relative to the construction work; alleges that the plaintiff in September, 1930, commenced work under the contract and constructed the concrete work for two floors, but not according to the plans, specifications, and contracts, and in a good and workmanlike manner, but that it was faulty and defective and was condemned by the architect and ordered torn down and removed; that the concrete work was removed; that it was not satisfactory to Gifford or the Conant Hotel Company or to John Latenser & Sons, the architects; that the work was not finished by January 15, 1931, the contract date. The defendant Gifford admits that on October 12, 1930, he paid plaintiff the sum of $3,442.31 for the defective building which was removed, but that it was paid at a time when the defective concrete was concealed by the forms and before the defects were known, and he is entitled to a return of this money.

Defendant Gifford also alleges that, after the addition

had been torn down and removed, the plaintiff questioned the sufficiency of the plans and specifications and advised him by letter, as well as Benson & Garrett and the architects, they were insufficient, that it was impossible for it to produce a safe, sound, or workmanlike job that would comply with the ordinances or standard building practice and be acceptable to any of the parties; that the plaintiff informed the Conant Hotel Company that if the addition was erected as planned it would be unsafe; that plaintiff informed others in the city of Omaha that the proposed addition would be unsafe and insecure and would entail large liability against the hotel company; that, as a result, Conant canceled its lease which damaged Gifford in the sum of $60,000.

Gifford further alleges that plaintiff, during the prosecution of the work, damaged the roof and cornices and demolished the pent house, which he was obliged to and did repair at a cost of $2,578.30; that plaintiff failed to protect the building from snow and rain, which penetrated into the rooms on the upper floors, the repairs of which cost $659.54; that the Conant Hotel Company claims from Gifford damages on account of loss suffered to its business in the sum of $5,849.01.

Gifford alleges that the plaintiff complained to the building inspector and caused him to revoke the building permit until May, 1931; that Gifford paid Benson & Garrett for the architect, John Latenser & Sons, the sum of $2,430 before the defective work was discovered, and was damaged that amount; that the total damages sustained were $74,959.16. Gifford alleges the execution of the performance bond for Benson & Garrett company by the Metropolitan Casualty Insurance Company and prays for judgment against it as well as Benson & Garrett for his damages.

Benson & Garrett filed an answer and cross-petition in which it alleges in substance: The execution of the contract to build the addition; the condemnation of the work and the failure of Parsons Construction Company to carry

out its contract until May 23, 1931; that Benson & Garrett was at all times ready and willing to perform its contract; the wrongful cancelation of the contract by the executors on the 27th day of May; that Benson & Garrett had been damaged and asked the court to determine the amount. The damages alleged are $12,106.06 profit lost, $3,850.26 loss on contract for plumbing with B. Grunwald, Inc.; loss on contract with Harry Binder for the electric wiring $526.77; loss resulting from balance claimed by John Latenser & Sons of $388.79; loss of cost of performance bond, $1,095.50.

B. Grunwald, Inc., on December 12, 1931, filed its answer and cross-petition, alleging that it had a valid lien for material and labor for plumbing in the sum of $2,185.96.

Parsons Construction Company filed replies and answers to cross-petitions of Benson & Garrett and Gifford, the substance of which is that the plaintiff was prevented from its performance of the contract by Gifford, and that the work was done in compliance with the plans and specifications and was condemned wrongfully and without authority; that it was not a party to the contract between Benson & Garrett and the executors of the estate and had no knowledge of its provisions; that the damage of other persons furnishing labor and materials on said building was not due to any fault of plaintiff.

The Conant Hotel Company filed an answer and cross-petition against Gifford and Benson & Garrett Company alleging damages for loss of use of parts of the hotel building, loss of business and property damage caused by the delay of building operations and by water and snow leaking through the roof.

Gifford filed an amendment to the amended answer alleging an extension in time at the request of Benson & Garrett and Parsons Construction Company on condition that Parsons Construction Company would retract statements that it could not do a good, workmanlike job under the plans and specifications, and plaintiff must release Gifford from any and all claim for work done and reim-

burse him for the money paid or credit it upon the contract and all liens must be waived or released, which condition it insisted was not met.

The Metropolitan Casualty Insurance Company filed an amended answer challenging the jurisdiction of the court to enter a judgment against it for that there was a misjoinder of parties; that it was brought into the case by defendant Gifford who seeks to recover damages from it for failure of Benson & Garrett to perform its contract; that under the bond it was not liable for any insufficiency of the plans, which are alleged to be insufficient; that an extension of time was granted without its consent and timely notice of failure was not given it; and that Gifford canceled the contract without notice to it.

By proper pleading, the allegations of each cross-petition were traversed. This is a brief resumé of the pleadings. This case came on for hearing September 27, 1932, whereupon much evidence was taken, the trial consuming about a month. It was then argued and taken under advisement. Subsequently on September 11, 1933, more evidence was adduced and on November 3, 1933, a decree was entered, the finding and judgment of which follows:

"That the plaintiff entered into an agreement, as alleged, with Benson & Garrett Co. to do certain work in erecting a four-story addition upon the existing structure of the Sanford Hotel in the city of Omaha, Nebraska, on the premises described in the petition; that said Benson & Garrett Company had previously contracted, as alleged, with Harold Gifford, the then owner of said premises for such erection; that said Harold Gifford died on November 28, 1929, and defendant, Sanford R. Gifford, and one Herbert M. Rogers, who is now deceased, were appointed executors and named as trustees under the will of the said Harold Gifford and the said Sanford R. Gifford is the sole acting executor under the will of the said Harold Gifford; that subsequently the said executors with the authorization of the county court of Douglas county, Nebraska, entered into an agreement with Benson & Garrett

to erect the said addition to the hotel; that plaintiff entered upon the premises and built a hoisting tower and protection to the previously existing structure of said hotel and prepared bases for extending upwards the reinforced concrete pillars of said structure and a canopy over the sidewalk in front of the same and proceeded to supply forms and temporary supports for three of the four floors of said structure and raise the pillars for the same and placed the concrete for such pillars and two floors of the same. Certain of said concrete work was found to be defective and the architects of said building properly required the plaintiff to remove same and same was all removed leaving no part of said structure except the preparatory portions thereof and the temporary supports.

"Afterwards it was mutually agreed by plaintiff and said Benson & Garrett Co. and said executors and their tenant that the time for completing said structure should be extended to August 15, 1931, and on or about May 27th said executor, Sanford R. Gifford, at that time sole surviving one, notwithstanding the extension of time aforesaid and the remonstrances and objections of plaintiff and of said Benson & Garrett Co. and the costly preparations and materials made and procured for such work, ordered said Benson & Garrett Co. to stop any further work upon said structure and remove all property of said plaintiff from the premises and put same in repair, and the court finds that such action by said executor was wholly without justification and constituted a breach of said contract and said executor became liable for all loss and injury thereby caused, and the court finds that such loss and injury to plaintiff in labor and materials for which it is entitled to compensation from said Benson & Garrett is in the sum of $4,179.33, of which it had received before the condemnation of the concrete work the sum of $3,871.31, and there remains unpaid for said labor and materials the sum of $308.02, and by reason of the loss to said plaintiff of the profit reasonably to be derived and agreed for in the contract with said Benson & Garrett Co. of $4,000, making

an aggregate of $4,308.02 recoverable by plaintiff from said Benson & Garrett Co. on account of said contract.

"The court further finds that said Benson & Garrett Co. on account of liability incurred on contract for said construction of said addition to the hotel to B. Grunwald, Inc., on the heating and plumbing contract for the same are liable in the sum of $2,348.46, and also liable to Harry Binder in the sum of $526.77, of which $350.80 was for work torn out with the concrete and which should be charged to plaintiff and reduced plaintiff's demand by that much, viz., to the sum of $3,957.22, and said Benson & Garrett Co. also incurred expense of premium on a surety bond at request of said executor in the sum of $1,095, and in addition to all of above a liability for an architect's fee of $373.87 balance after allowing for $2,000 paid to said architects from moneys received from said executor.

"The total of liability incurred by said Benson & Garrett still unpaid is, therefore, the sum of $7,950.32 and, in addition, thereto, Benson & Garrett is entitled to recover the profit derivable from said contract in the sum of $8,056.22, making a total of $16,006.74.

"The court further finds that neither the plaintiff, Parsons Construction Co., nor B. Grunwald, Inc., is entitled to a lien on the said premises and that the liens which are of record should be canceled and held for naught.

"The court further finds that the petition of the Conant Hotel Company, a corporation, should be dismissed and the claim of Sanford R. Gifford, sole surviving executor and named as trustee under the will of Harold Gifford, deceased, against Benson & Garrett Co., against the plaintiff and against the Metropolitan Casualty Co. should be dismissed.

"It is therefore ordered, adjudged and decreed that Benson & Garrett Co. have and recover from Sanford R. Gifford, sole surviving executor and named as trustee under the will of Harold Gifford, deceased, the sum of $16,-006.74 to be paid only after payment of the following

claims to subcontractors, to wit: $3,957.22 to Parsons Construction Co., $2,348.46 to B. Grunwald, Inc., a corporation, and $526.77 to Harry Binder and $373.87 to Latenser & Sons and such balance as may be due on said bond premium; that the claim of the defendant, B. Grunwald, Inc., for a lien against the Sanford Hotel property be and the same is hereby denied; that the claim of the Parsons Construction Co. for a lien against the Sanford Hotel property be and the same is hereby denied; that the claim of the Conant Hotel Co., a corporation, for damages is dismissed and the claims of Sanford R. Gifford, sole surviving executor and named trustee of the estate of Harold Gifford, deceased, against Benson & Garrett, against Parsons Construction Co. and against the Metropolitan Casualty Co. be and the same are hereby dismissed; that the Conant Hotel Co. and B. Grunwald, Inc., shall pay their own costs and Sanford R. Gifford, executor of the estate of Harold Gifford, deceased, and named trustee under the will shall pay the balance of the costs in the action."

B. Grunwald, Inc., the subcontractor, was not entitled to a foreclosure of a mechanic's lien. It was the subcontractor for the plumbing and heating. It had installed considerable work, which was destroyed with the concrete work torn down. But one reason why the foreclosure of the lien was properly refused was that the lien was not filed within the time a subcontractor is required to file a lien. A subcontractor is required to file a statement of the amount due him within sixty days from the date of furnishing the labor or material to secure a lien upon the premises. Comp. St. 1929, sec. 52-102; *Watkins & Co. v. Kobiela*, 84 Neb. 422; *Wells v. David City Improvement Co.*, 43 Neb. 366.

B. Grunwald, Inc., moves that it be permitted to amend its cross-petition by increasing the amount of the prayer from $2,185.96 to $3,503.16 to conform to the proof advanced at the trial. It relies upon section 20-852, Comp. St. 1929, as construed in several decisions of this court.

This cross-petition sought the foreclosure of a mechanic's lien. It did not allege a right to recover either damages or upon a contract with the owner. Generally, there is no debt existing between the owner of the premises and a subcontractor, independent of the statutory lien. 40 C. J. 140. The claim of B. Grunwald, Inc., was considered a liability of the general contractor, Benson & Garrett Company, and allowed as a part of its damage recoverable against the owner by the trial court. As such it will be considered later.

The Metropolitan Casualty Insurance Company's liability could only attach when and if its principal, Benson & Garrett Company, became liable under its contract with the owner for failure to perform. Since we arrive at the same conclusion as the trial court on the question of liability for the cancelation of the contract and no judgment is entered against either the insurance company or its principal, it is unnecessary to consider or decide the propositions advanced by it.

The Conant Hotel Company has not prosecuted an appeal from the judgment against it and therefore need not be considered here. Likewise, the judgment of the trial court that Parsons Construction Company was not entitled to the foreclosure of a lien was correct under the evidence. The Parsons Construction Company failed in the construction of the first two floors of the addition in that the work was defective, unsafe, and not done in a workmanlike manner. A large portion of the evidence relates to this issue. The building was to be of reinforced steel and haydite concrete construction. Haydite is a burnt clay aggregation, used instead of crushed rock or gravel, with cement and water to make a lighter weight concrete. When the mixture is poured into the forms, it requires tamping to get the concrete around the steel. This is called puddling. Competent witnesses, architects, and building engineers testified that the structure built by Parsons Construction Company was defective and unsafe. Even Parsons Construction Company witnesses admitted

it was bad, but could have been repaired by the use of a gunnite machine. The other experts testified that it could not be so repaired giving a solid substantial structure sufficient for the purpose. The witnesses who testified gave persuasive reasons to support their opinion. It is concluded that the concrete work was so defective that it was properly torn down; that the defects were caused by Parsons Construction Company and were due to no other cause.

There is a conflict of authority as to right of a subcontractor to a mechanic's lien where the improvement is worthless due to the contractor's default. In *Pipkorn Co. v. Tratnik,* 161 Wis. 91, 16 A. L. R. 975, it was held that a material-man furnishing materials to à building contractor for the construction of a building was entitled to a lien, even though the work of the contractor was such that it was condemned by the city building inspector and never accepted by the owner. A careful annotator (16 A. L. R. 981) has discussed the cases relating to this question and states that "the court seems to predicate the liability of the owner on the theory that the principal contractor is acting as the agent of the owner in his purchase of material." In Indiana the statute gives the subcontractor a lien unaffected by the failure of the principal contractor to perform his contract. *Coonse & Caylor Ice Co. v. Home Stove Co.,* 70 Ind. App. 226. In *Terrell v. McHenry,* 121 Ky. 452, where a subcontractor claimed a lien for his services in putting a roof on a building, the contract provided that it was to be paid for only if it did not leak. The roof leaked and the owner refused to accept it as a performance of the contract. This is closely analogous to our case, in which the workmanship of the subcontractor Parsons Construction Company was defective and was condemned by the architect and removed. The Kentucky court held that the subcontractor in such a case was in no better position than the general contractor. Later, in *Monyahan v. City of Lancaster,* 168 Ky. 677, that court held that a mechanic's lien would not be allowed where the work was so de-

fective as to be useless, although he was not responsible for the defects, on the theory that the owner had received nothing of value. But no case has come to our attention where a subcontractor has claimed or been decreed a mechanic's lien in a case such as this, where the faulty construction rendering the structure worthless was his fault. It seems so inequitable and unjust to require an owner to pay under such circumstances that it could not be justified under any circumstances.

But Parsons Construction Company contends that the work was performed according to the contract and specifications for which it was not responsible. Let us examine the evidence, for it adequately refutes this contention. John Latenser, Jr., an architect, a member of the firm of John Latenser & Sons, being of the opinion that the work was defective, called L. R. Viterbo, an experienced engineer from St. Louis, and Professor Clark Mickey of the engineering department of the University of Nebraska, who testified after a careful inspection that the concrete work was about 60 per cent. bad to 40 per cent. good; that there were pockets and cavities in the members; that there was much spongy or porous concrete with rough surfaces; that much of the reinforcing steel was exposed and the concrete was not homogeneous; that it was unsafe and could not be repaired; that the failure was due to improper "puddling" or working of the concrete at the time of pouring. We are not unmindful that another expert testified somewhat to the contrary, but we are impressed by the testimony related and find it corroborated by other evidence of the physical facts by photographs and other exhibits as well as testimony of nonexpert witnesses. The concrete work done by Parsons Construction Company was defective and worthless because the workmanship was bad. No other conclusion could possibly be reached from a careful examination of the evidence.

A subcontractor is not entitled to a mechanic's lien for labor and materials furnished in the construction of a building where the structure is defective and unsafe due

to his poor or improper workmanship and is not accepted by the owner but is removed.

This court has held in a suit to foreclose a mechanic's lien for labor and materials furnished for a building that a trifling failure to perform the contract is not sufficient to defeat the lien where it appears that there has been a substantial compliance. *Grove-Wharton Construction Co. v. Clarke,* 86 Neb. 831; *McGowan v. Gate City Malt Co.,* 89 Neb. 10; *Hahn v. Bonacum,* 76 Neb. 837. But where a subcontractor builds a reinforced concrete structure which is so defective and unsafe because of poor workmanship that it is necessary to remove it, there is not a substantial compliance with the contract. The decree of the trial court properly denied the plaintiff a foreclosure of a mechanic's lien.

The trial court also determined that the owner, Gifford, wrongfully canceled the contract on May 27, 1931. This issue was raised by the pleadings of Benson & Garrett. Gifford in his cross-petition had sought to recover damages because Benson & Garrett had not performed its contract. Gifford now asserts that, when the court determined that Parsons Construction Company was not entitled to a mechanic's lien, its jurisdiction was limited to a dismissal of the case. A reference to the pleadings of the six parties involved in the case indicated that the many issues were much complicated. In addition to the matters here, there were other matters, such as the electrical wiring, the premium on the bond, the architects' fee, and the payments made by Gifford on an estimate of the work before the defects were discovered, which required consideration. If, on the one hand, Benson & Garrett had entirely failed and refused to perform their contract or, on the other, Gifford had failed and refused to perform, these matters had to be taken into account and determined for the purpose of adjudicating the rights of the parties. This suit in that respect is almost in the nature of an accounting.

The trial court found that neither the plaintiff nor B. Grunwald, Inc., was entitled to the foreclosure of a me-

chanic's lien. The trial court then considered the case between Gifford and Benson & Garrett as one for damages for failure or refusal to perform the contract for the construction of the addition to the building. For a determination of the issues between these two parties it was necessary to determine the rights of all the other parties in relation thereto. It was also necessary to determine any rights or liabilities that might accrue to one because of the contracts for the electrical wiring with Harry Binder; for the architects with John Latenser & Sons; for the premium on the performance bond with Harry Tukey, and all other matters that might affect the amount of the damages, if any, under the contract. The pleadings presented these issues to the court. Gifford complained that he was deprived of a jury trial on the question of his failure to perform the contract and his liability for damages. But Gifford in his cross-petition asked for damages against Benson & Garrett and the surety on its performance bond. The trial of this case occupied the time of the trial court for almost a month in the first instance. It was taken under advisement, argued, and briefed. Further evidence was then taken upon the question of the amount of damages almost a year later. Then for the first time by either pleading or objection to testimony did the defendant Gifford insist upon his right to a jury trial.

In *Pickens v. Polk*, 42 Neb. 267, this court affirmed a judgment against a former owner entered in a suit in equity, on an account where the property had been sold but no service obtained on purchaser within statutory time. It was held that the court had jurisdiction of the subject-matter, the defendant had been served, and joined issues. In this case, the suit in equity was properly brought to foreclose a mechanic's lien. These other issues were pleaded by the defendants. It is a well-settled rule that a court of equity which has obtained jurisdiction for any purpose will retain jurisdiction for the purpose of administering complete relief with respect to the subject-matter. 21 C. J. 134; *Buchanan v. Griggs*, 20 Neb. 165;

*Olson v. Lamb,* 61 Neb. 484. The subject-matter of this suit was the foreclosure of a mechanic's lien under a contract for the construction of the addition to the Sanford **Hotel.**

Another reason is that a court of equity which has jurisdiction at the commencement of a suit will retain it where the issues presented are in the nature of an accounting and are so numerous, so distinct, and the evidence to sustain them so variant, technical and voluminous that a jury is incompetent to deal intelligently with them and reach a just conclusion. *Merritt v. Johnston,* 109 Neb. 859. In this case, the rights and liabilities of the parties are so interrelated and dependent upon the rights and liabilities existing between each party and others. For example, Benson & Garrett's right to recover is affected as to amount by the extent of its liability to subcontractors. In order to determine the amount of its recovery, it is necessary to determine its liability to several others. To settle this entire controversy would require numerous actions at law to determine the extent of the liability of the owner, if any, which would again depend upon whose failure caused the damage. "Equity * * * seeks to avoid multiplicity of suits." *School District D v. School District No. 80,* 112 Neb. 867. "The preventing of a multiplicity of suits in connection with other grounds of equitable cognizance may justify a court of equity in entertaining jurisdiction." *Rogers v. Selleck,* 117 Neb. 569. See *Paxton Irrigation District v. Conway,* 94 Neb. 205; *Crawford Co. v. Hathaway,* 67 Neb. 325.

The distinction between actions at law and suits in equity has been abolished by the Code (Comp. St. 1929, sec. 20-101) and legal or equitable principles may either or both be enforced according to the facts. *Hopkins v. Washington County,* 56 Neb. 596. "Of course," states Pomeroy, Equity Jurisprudence (4th ed.) 408, "there must be some common relation, some common interest, or some common question, or else the decree of a court of equity, and the relief given by it in the one judicial proceeding, could not

by any possibility avail to prevent the multiplicity of suits which is the very object of its interference." For the reasons that there was a waiver, that a court of equity having taken jurisdiction could retain it to do complete justice with respect to the subject, that the issues were in the nature of an accounting and so involved, technical and voluminous that a jury was incompetent to deal with them and to prevent a multiplicity of suits, the trial court did not err in determining all the issues presented by the pleadings.

We now reach the controversy between Benson & Garrett and Gifford. Parsons Construction Company is only indirectly involved therein in that its actions are pleaded as a justification of the cancelation of the contract between Benson & Garrett and Gifford, and as an element of damage, in case the cancelation by Gifford was not justified. We have already determined that the defective concrete in the partially erected addition was not due to insufficient plans and specifications but due to the poor workmanship of Parsons Construction Company. Therefore, there could be no recovery for the work or materials which built that part of the structure except such as could be used in proper reconstruction. The right of Benson & Garrett to recover depends upon the justification of the action of the executors of the Gifford estate in stopping work upon the addition, May 27, 1931. If it were not justified, then it constituted a breach of the contract and Gifford became liable for the resultant damages.

While Parsons Construction Company was undoubtedly the cause of trouble in this case by its failure in the construction work, it is also true that Gifford insisted that it proceed with the work of rebuilding. In view of this, Gifford's effort to justify the cancelation because of the delay is unavailing. There had also been an extension for the convenience of all parties, agreed upon by all and objected to by none. Benson & Garrett were the general contractors and they were at all times ready to proceed with the building. It offered to get a new subcontractor

in place of Parsons Construction Company, but the executor demurred to this, although he had no right to make such an objection under the contract. When Parsons Construction Company finally arranged to commence work, it was ordered off the premises by Gifford on May 27, 1931.

Gifford also seeks to justify this action by the fact that, when the controversy arose as to the quality of the construction work, Parsons Construction Company stated that the plans and specifications were such that a workmanlike job could not be done. From December 5, 1930, until sometime in May, 1931, Parsons Construction Company, Benson & Garrett, and the architects were engaged in a controversy over this statement. Gifford was insisting that Parsons Construction Company do the construction work and when it complied with the demand it was stopped. The action of Gifford was inconsistent with the demand that it proceed with the work.

Gifford also seeks to justify his act of cancelation on May 27, 1931, on the ground that Parsons Construction Company had filed a mechanic's lien for the work and materials for the defective construction when the contract with Benson & Garrett provided that it was to be completed and delivered free and clear of such liens. This was no justification because Benson & Garrett had a performance bond which amply protected Gifford on this matter. Without further recital of the evidence, it should be sufficient to state that our finding is the same as the trial court that the action of Gifford "was wholly without justification and constituted a breach of said contract and said executor became liable for all loss and injury thereby caused."

It remains only to determine the amount of the damages occasioned by the breach of the contract with Benson & Garrett by Gifford. It is the well-established general rule in this state that the party injured by the breach of contract is entitled to recover all his damages, including profits prevented and losses sustained which are certain and naturally follow the breach. *Western Union Telegraph Co. v. Wilhelm,* 48 Neb. 910. In this case, Benson & Gar-

rett are entitled to recover the certain profits as well as the losses for which they are certainly liable by reason of their contracts with subcontractors. This was the basis of the decree of the trial court, which is adopted as the decree of this court except in a few minor details. Obviously, the trial court made an error in finding that Parsons Construction Company had been paid the sum of $3,871.31 before the defective construction was discovered. By the pleadings and the evidence, the sum is disclosed to be $3,442.31. With reference to the liability of Benson & Garrett to Grunwald, Grunwald has secured a judgment in a separate action for the sum of $3,503.16. The evidence in this case supports a finding for that amount; the cost of the labor and materials put into the construction of the building, $2,166.80, and in addition $1,336.36, the profit certain to result from the completion of the contract. Grunwald filed a mechanic's lien for $2,166.80, foreclosure of which was denied in this suit. But Benson & Garrett alleged the contract, the judgment recovered against them, and facts sufficient to justify its recovery of the entire damage. Of course, Gifford was not a party to the action brought by Grunwald against Benson & Garrett, but the evidence requires a finding here that Benson & Garrett are liable to Grunwald for the cost of labor and materials in the sum of $2,166.80 and in addition thereto the sum of $1,336.36, representing profit, or a total of $3,503.16. The complaint of Parsons Construction Company has not been overlooked, that certain items, including several carloads of haydite, some metal windows, exterior wood frames and miscellaneous items, were erroneously disallowed by the trial court. The burden of proof was upon the plaintiff to establish loss by reason of these items. The preponderance of the evidence does not establish that there was loss sustained upon these items.

As modified, the decree will read that Benson & Garrett Company ordered through its subcontractor Parsons Construction Company costly preparations and materials made for such work for which Parsons Construction Company

is entitled to compensation from Benson & Garrett Company in the sum of $4,179.33, of which it received before the work was condemned the sum of $3,442.31, and there remains unpaid the sum of $737.02, and by reason of the loss of profit to Parsons Construction Company the sum of $4,000, according to the provisions of the contract, making a total of $4,737.02 due Parsons Construction Company from Benson & Garrett Company. Parsons Construction Company claim must be reduced by the $350.80 for work torn out which Harry Binder had done. This makes the total liability of Benson & Garrett Company to Parsons Construction Company the sum of $4,386.22. Benson & Garrett Company's liability to B. Grunwald, Inc., $3,503.16; to Harry Binder $526.77; to John Latenser & Sons, architects, $373.87, in addition to the $2,000 paid by Gifford heretofore; to Harry Tukey premium on bond $1,095. The total liability of Benson & Garrett Company is $9,885.02. In addition, Benson & Garrett Company were entitled to their profit on the contract, amounting to $7,976.28, making a total due Benson & Garrett Company as a result of total liabilities and profits of $17,861.30.

The decree of the trial court with these slight modifications is affirmed.

AFFIRMED AS MODIFIED.