CLAUDE O. DRAKE ET AL., APPELLANTS, V. MARY MORROW: S. D. RALSTON, INTERVENER, APPELLEE: LEWIS POLLAT ET AL., APPELLANTS.

299 N. W. 545

FILED JULY 25, 1941. No. 31082.

*Hoagland, Carr & Hoagland,* for appellants.

*Shuman & Overcash, contra.*

Heard before PAINE, CARTER and MESSMORE, JJ., and SPEAR and FALLOON, District Judges.

FALLOON, District Judge.

This is a partition suit instituted in Dawson county on April 18, 1934. A decree in partition was entered on December 6, 1934, in which one of the plaintiffs, Claude O. Drake, now an appellant in this court, was found to own a 2/11 interest in certain real estate, and a referee was appointed. On December 20, 1934, one Ralston, now appellee and cross-appellant, intervened in this suit by virtue of a judgment on a note obtained in Lincoln county, in which a writ of attachment was issued to the sheriff of Dawson county, and levied upon said 2/11 interest of Claude O. Drake, which was claimed by Ralston to be the property of Lewis Pollat and Anna S. Drake, the defendants in the note case. An injunction suit, No. 8529, was filed in Dawson county on February 15, 1935, against Ralston and the then sheriff of Dawson county to restrain said defendants from selling the 2/11 interest above mentioned which had been attached, and later on January 17, 1936, in the afternoon, through default, the restraining order was made permanent and title quieted on said 2/11 interest in Claude O. Drake.

The issues raised by the intervention petition of Ralston and the answer thereto of Claude O. Drake were decided by the court below on May 21, 1940, in the partition suit, in which the trial court found generally for the intervener, found specifically that the injunction judgment in case No. 8529 in the Dawson county district court is in this action no bar to the relief prayed for by the intervener, that the deed given by Lewis Pollat and wife to Anna S. Drake, dated

March 28, 1932, was given for a valid consideration paid by Claude O. Drake and conveyed an undivided 1/11 interest in the land involved to Anna S. Drake in trust for Claude O. Drake, and caused such interest of Lewis Pollat to be not subject to intervener's claim. The trial court further found that the deed of Anna S. Drake under date of December 7, 1932, is void as to the creditors of Anna S. Drake so far as the interest of Anna S. Drake is concerned, but that said deed operated to convey to Claude O. Drake the interest in said land that Anna S. Drake so held in trust for him. The trial court then directed that the sum of $1,711.74, impounded funds from sale of this 2/11 interest conveyed by the said deed of December 7, 1932, be divided and one-half paid to Ralston, intervener, to be applied on his judgment against Anna S. Drake, and the other half, less costs of intervention, be paid to Claude O. Drake. Claude O. Drake gave notice of appeal and filed supersedeas bond. Motion for a new trial was filed by the intervener, Ralston, and was overruled. Plaintiffs appealed and intervener cross-appealed.

The appellant, Claude O. Drake, claims the 1/11 interest which was set over to the intervener, while the cross-appellee, Ralston, claims the 1/11 interest which Claude O. Drake obtained by the decree of the lower court. These are the issues involved in this suit.

This case was tried below before Honorable J. L. Tewell, district judge, who rightfully heard it. All the contentions regarding his right to hear the case are entirely without merit and do not warrant any further discussion in this opinion.

Various phases of this case involving the same 2/11 interest in the real estate, which is the subject of this controversy, have been before this court in *Stockmens State Bank v. Pollat,* 130 Neb. 244, 264 N. W. 875, and *Drake v. Ralston,* 137 Neb. 72, 288 N. W. 377. These cases have been finally concluded and are involved only incidentally in this suit.

Ralston had a right to intervene in the partition suit and set up his interests under the statute, but even inde-

pendent of any statutory provisions, this right could not be denied him. The partition suit was commenced in April, 1934, the petition of intervention filed therein on December 20, 1934, and the injunction suit started on February 15, 1935. In the partition proceedings, the district court acquired exclusive and complete jurisdiction over the real estate involved, and the issues raised by the intervention proceedings. It is fundamental that an equity court, having taken jurisdiction over certain property, will retain that jurisdiction for the purpose of administering complete relief with respect thereto.

"A court of equity which has obtained jurisdiction for any purpose will retain jurisdiction for the purpose of administering complete relief with respect to the subject-matter." *Parsons Construction Co. v. Gifford,* 129 Neb. 617, 262 N. W. 508.

The referee in the partition suit was directed to sell, and did sell, the real estate involved therein on October 23, 1935. Motion to confirm the sale and approve the report of the referee was made, to which objections were made on behalf of Claude O. Drake and Anna S. Drake. On the morning of January 17, 1936, the sale was confirmed and deed ordered made, and the share of Claude O. Drake was ordered impounded with the clerk of the court until further order and until the intervening claim of Ralston was determined. Later, on January 21, 1936, an order of distribution was made in which the share of Claude O. Drake was ordered impounded until further order of court. The record does not show any strenuous objections being made to any of the above proceedings. No appeals were taken from the order of confirmation or the order of distribution and they therefore became conclusive on all parties to the suit, and cannot now be successfully attacked.

It is so well settled, in this state, that a partition sale is a judicial sale, that no authorities need be cited. Where a sale is confirmed, the interest of any one in the proceedings is disposed of, for it is not the land that is sold, but the interest of all the parties. The decree of confirmation

takes effect from the time that the court announces it from the bench and this confirmation relates back to the date of the actual sale.

The default judgment in the injunction suit was taken on the afternoon of January 17, 1936. At that time there was no title in any of the parties to that suit that could be quieted, such title having been sold at judicial sale in the partition suit.

As was said in *Conrad v. Kaup*, 137 Neb. 900, 291 N. W. 687: "The relief ordinarily granted in equity is such as the nature of the case, the law, and the facts demand, not at the beginning of the litigation, but at the time the decree is entered."

Again, in *First Trust Co. v. Airedale Ranch & Cattle Co.*, 136 Neb. 521, 286 N. W. 766, this court said: "Differing from the rule in actions on the law side of the court, which limits the judgment to the facts as they existed at the commencement of the action, when the action is in equity, relief will be administered as the nature of the case and the facts, as they exist at the close of the litigation, demand."

After the judgment of confirmation in the partition suit, there was no title that could be quieted in the injunction proceedings and therefore the only judgment of any effect was the order making the restraining order permanent. The rule of *res adjudicata* could not apply to the order impounding the funds. The issues raised in the partition litigation, by the intervener, were not determined by the default, injunction decree. In other words, the judgment confirming the sale and impounding the money share of Claude O. Drake were final orders that could not be collaterally attacked. The *res adjudicata* rule may apply to subsequent judgments, but cannot apply to those already obtained.

The effort to vacate the injunction decree decided nothing except that the evidence was insufficient to establish that any fraud was practiced. The merits of the case tried were not involved and therefore the principle of *res adjudicata* would not apply. To apply, the issues and parties must be identical.

The only question of any real merit in this case is whether Lewis Pollat and his sister, Anna S. Drake, did by fraudulent means seek to defeat the rights of their joint creditor, Ralston. The evidence has been therefore painstakingly read and the authorities checked.

The undisputed evidence shows that Lewis Pollat obtained a loan from the Stockmens State Bank, and the original note evidencing such transaction was dated on September 10, 1930, for the sum of $2,500, due in six months, and signed by both Lewis Pollat and his sister, Mrs. Claude (Anna S.) Drake, in which both pledged their separate estate. Renewal notes were later signed by both parties with the same pledge. The last was for $1,900, payments having reduced it to that amount, and was dated April 16, 1932, due in 60 days. This obligation was reduced to judgment against both signers and is now the judgment of Ralston, which was set up as the basis for the intervention proceedings. Property statements were made by both obligors in which the interest of each signer in the disputed property was set up, and there is no doubt but that this property was used by both these parties so they could obtain the proper credit to negotiate this loan. The property statement, dated September 10, 1931, was signed by both, and each listed his interest in this farm and placed a value on each share at $2,000. Another property statement of Anna S. Drake was given to the bank on April 18, 1931, in which she swore she had no liabilities of any kind, and valued her interest in this real estate as $2,800. She further promised the said bank that she would notify it "immediately in writing of any materially unfavorable change in my financial condition." The evidence also shows that on March 28, 1932, Lewis Pollat deeded his interest in this farm land, inherited from his mother, to his sister, Anna S. Drake, for a stated consideration of $1,000. On December 7, 1932, Anna S. Drake for a stated consideration of $1,000 and other valuable consideration, quitclaimed all her interest in the same property to her husband, Claude O. Drake. In other words, she deeded the interest she already had from the es-

tate, as well as the interest acquired from her brother, Lewis Pollat. These two deeds were placed on record on December 9, 1932, about the same time. The reasons for withholding the first deed from Lewis Pollat from record for nearly nine months, or for placing same in the name of Anna S. Drake, were rather vague, but the preponderance of the evidence shows that approximately $1,000 was paid therefor by Claude O. Drake some two weeks before. This transaction is not contradicted and the circumstances and natural inference that could be drawn from all such are not sufficient to overcome the conclusion that it was made in good faith. The consideration stated in the quitclaim deed was not paid at the time nor did any pass, although it was claimed that it was made because of some medical expenses of the wife which she wanted to repay her husband.

That transactions between relatives are looked upon with suspicion by the courts in such cases and the burden is upon those asserting good faith to prove it require the citation of no authorities. Likewise, there is no doubt but that the property involved in these conveyances was listed by the joint note signers to obtain credit necessary for the loan, nor is there any doubt that a debtor, even though insolvent, may, if done in good faith, deed his property to secure a new or future consideration. A debtor even has a right to prefer one creditor over another, if such preference is honestly made. Silence does not always prove guilt.

While the evidence is somewhat vague and uncertain, it still points to the conclusion that the trial judge was right in holding that the Lewis Pollat share was properly conveyed to Claude O. Drake and the Anna S. Drake share properly subjected to intervener's attachment. The trial court, in the partition proceedings, having obtained jurisdiction, retained it to administer all the relief that it was possible to give, so as to bring this litigation finally to a close. Equity courts are not restricted only to adjustment of the rights of the parties as they existed at the commencement of a suit, but all relief appropriate as events occur during the pendency of the suit may be given. An equity court may

separate the two interests given in the quitclaim deed and properly find that the Lewis Pollat interest was held in trust for Claude O. Drake while the other remaining interest should be set aside and held for the benefit of the intervener.

The judgment is therefore affirmed, with the appellant, Claude O. Drake, and the intervener, Ralston, appellee and cross-appellant, each paying their own costs in this court.

AFFIRMED.