ELIZABETH HAUSNER ET AL., APPELLEES, V. JOHN V. MELIA, INCOMPETENT, AND MABLE MELIA, A WIDOW, ET AL., APPELLEES,
GEORGE R. SCHRAM AND MARILYN C. SCHRAM, RESPONDENTS AND THIRD-PARTY DEFENDANTS, APPELLANTS.

326 N.W.2d 31

Filed November 5, 1982. No. 44382.

Harris, Feldman, Stumpf & Pavel, for appellants.

Swarr, May, Smith, Andersen & Jensen, for appellee Mable Melia.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, WHITE, HASTINGS, and CAPORALE, JJ.

HASTINGS, J.

George R. and Marilyn C. Schram, respondents herein, have appealed from an order of the District Court, the effect of which was to alter the description of certain real property which the respondents had purchased at a partition sale held on September 4, 1974. Although the errors assigned by respondents simply state that the decision of the trial court was not supported by the evidence and was contrary to law, some further amplification is required for an understanding of the problem with which we are presented.

The present litigation originated in a petition filed in 1973 by several of the heirs of Paul Henry Melia, deceased. It asked for a construction of his will and for partition of certain real estate devised by that will. Mable Melia, the present applicant, is the widow of the decedent and was named as a party defendant in that original action. The petition alleged that by the terms of Melia's will, Mable Melia was devised the family home, which was specifically described by metes and bounds.

The remainder of the nearly 80 acres located in the north half of the southwest quarter of Section 15, Township 13 North, Range 10 East of the 6th P.M., Sarpy County, Nebraska, except for that property described as the "family home" devised to Mable Melia, descended by will to certain other of Paul Henry Melia's heirs. Unfortunately, the specific description of the "family home" contained in the will and repeated in the petition was incomplete and ambiguous in that one of the legs of that description did not close. In an effort to correct this deficiency, Mable Melia had an independent survey performed, and in her answer alleged ownership of the "family home" devised to her, using the descrip-

tion furnished by her surveyor. This description was not ambiguous but just plain erroneous, in that it cut off the south 100 feet of her property, which comprised the bluegrass lawn on that side of the house.

As a part of the partition proceedings, the referee reported that partition in kind was not possible and recommended a sale. The court confirmed the report of the referee and directed a sale. The notice of sale was published, the sale accomplished, reported by the referee, and the court entered an order confirming the sale and ordering a deed. The deed was executed and delivered to Schram, the purchaser at the sale. However, throughout the entire proceedings, in the reports, orders, notices, and the deed itself, the land sold was described generally as the northwest quarter of the southwest quarter and Tax Lot 4 in the northeast quarter of the southwest quarter in Section 15, Township 13, Range 10, Sarpy County, except that part devised to Mable Melia by the will of Paul Henry Melia, specifically described, using the erroneous description which had been furnished to the court by Mable Melia herself.

Although the record is sparse on this issue, it is apparent that the Schrams went into possession of the property described in the referee's deed, except for the disputed 100 feet. That particular strip of ground was separated from the remainder of the property described in the referee's deed by a white, three-rail fence. George Schram, in his testimony, would say no more than that the property he intended to buy was that contained in the legal description in the notice of sale. However, he did acknowledge the location of the white fence, which he himself referred to as "Mable Melia's south fence." Although his testimony was extremely evasive, Schram finally did concede that from the date of the sale up until the present time (the time of trial in 1981), he had planted no crops on the disputed 100

feet and that he never entered upon that particular ground for any purpose. He also admitted he knew that the house adjoining the 100 feet of lawn and located within the fence line was Mable Melia's house.

According to the testimony of Mable Melia it was not until sometime in 1977 that she discovered the error in the legal description. At that time Mrs. Schram wanted to plant some trees and had the north line of her property located by a survey. Mrs. Melia then learned of the discrepancy in the description and had her own surveyor recheck his work. According to the testimony of the surveyor, he had accurately located the south boundary line of Mrs. Melia's property with pins which could still be found in the ground alongside the fence. However, the written description which he furnished was erroneous. The record does not reveal any further activity or change in the nature of the possession of either the Schrams or Mable Melia to the present time.

This case presents several issues. The application simply alleged error on the part of the referee in conveying property owned by the applicant, Mable Melia, to George R. Schram, and prayed that the court quiet title in her to the disputed 100 feet. The trial court in its order determined that the issue was whether the true intention of the parties was accurately reflected in the deed, recited that the law of this state permits a court of equity to reform a deed where it fails to express the true intention of the parties, found for the applicant on the issue of reformation, and ordered that the Schrams execute a quitclaim deed to Mable Melia for the "property erroneously included in the deed issued by the Referee." The appellee, Mable Melia, devotes her entire brief to but one argument, i.e., that reformation of a deed for mistake will be granted where the mistake is mutual to both parties.

It is quite apparent that the mistake was not mutual. It was a unilateral mistake on the part of

Mable Melia. Secondly, the rule as to reformation of deeds urged by the appellee and utilized by the trial court does not relate to deeds as a part of a judicial sale. The authorities cited by the appellee in support of the rule and relied upon by the trial court all are concerned with private conveyances.

It is well settled that a partition sale is a judicial sale. *Drake v. Morrow,* 140 Neb. 258, 299 N.W. 545 (1941). A deed executed pursuant to a judicial sale, absent mistake or fraud, conveys only that property that lies within its calls. *Hendrickson v. Glaser,* 204 Neb. 492, 283 N.W.2d 41 (1979). " '*The deed is to be construed with the judicial proceedings of which it forms a part.* It conveys no greater title than the order of sale on which it is based, although absolute in form, and is void in so far as it includes land the decree did not authorize to be sold, the grantee receiving nothing more than color of title thereto. On the other hand, *the deed conveys only that which is described therein;* yet, where through the *mistake of an officer* it does not include that which was intended to be conveyed, *the purchaser may obtain relief* in equity.' (Emphasis supplied.)" (Emphasis supplied.) *Id.* at 497, 283 N.W.2d at 44. The corollary of that rule is that such deed conveys all that is described therein, provided that it is included within the order authorizing the sale.

It would appear, then, that in order to reform the referee's deed it would be necessary to reform or modify the orders of sale and confirmation. These orders were never appealed from and became final 1 month following entry of the order of confirmation on October 25, 1974. A remedy available would have been proceedings to vacate or modify the orders under the provisions of Neb. Rev. Stat. § 25-2001 (Reissue 1979). However, even if the present proceedings could be characterized as having been brought under the provisions of that statute, the record does not support the granting of relief under

any of the nine conditions set forth therein.

Therefore, Mable Melia's application must be considered as either a collateral attack on the prior proceedings or an independent action to quiet title.

"It is well settled that where the court has jurisdiction of the parties and the subject matter, its judgment is not subject to collateral attack." *Schilke v. School Dist. No. 107,* 207 Neb. 448, 451, 299 N.W.2d 527, 530 (1980). A confirmation of a partition sale disposes of all the interests of everyone in the suit to the purchaser, and after confirmation there is no title or interest of any party to such proceedings that can be collaterally attacked. *Drake v. Morrow, supra.* When all parties interested are before the court in a partition action, the order confirming the sale is final and binding, in the absence of fraud on the face of the proceedings, even though the judgment may be erroneous and would have been reversed on appeal. *Schleuning v. Tatro,* 122 Neb. 3, 238 N.W. 741 (1931). There is no question but that the court in the partition proceedings had jurisdiction of the subject matter and of the parties, including Mable Melia. Those proceedings cannot now be collaterally attacked.

However, we shall consider the applicant's general claim for relief by way of quiet title. We have previously rejected her contention that she is entitled to this relief because of an error in the description in the deed occasioned by the fault of the referee. However, a court of equity which has acquired jurisdiction of a matter for any purpose will retain jurisdiction for the purpose of administering complete relief with respect to the subject matter. *Parsons Construction Co. v. Gifford,* 129 Neb. 617, 262 N.W. 508 (1935). We will consider this issue de novo on the record, as we are required to do in equity cases.

Two common methods of establishing a boundary line other than by formal conveyance involve ad-

verse possession and acquiescence. However, relief by reason of adverse possession is not available in this case. Mable Melia is not permitted to tack on to her present possession that time of possession which existed prior to the partition action. A final judgment in a partition action determines the rights and interests of the parties in the subject property, and such parties are estopped from raising any claim of interest or title which was or could have been raised in that action. *Bender v. Fuchs,* 179 Neb. 162, 137 N.W.2d 364 (1965). Mable Melia's possession from the date of the judgment in partition to the present time falls short of the required 10 years.

However, the doctrine of acquiescence is another matter. In order to claim a boundary line by acquiescence, it is not necessary that there be an express agreement between the parties. "It has been frequently decided that though there is no express agreement as to the location of the boundary line, adjoining proprietors cannot question a line which they have, for a considerable number of years, recognized as the correct line between their properties." 2 Tiffany, Real Property § 654 at 682-83 (3d ed. 1939). "In order to establish a boundary by acquiescence, it is not necessary that the acquiescence should be manifested by a conventional agreement, but recognition and acquiescence must be mutual, and both parties must have knowledge of the existence of a line as a boundary line." 11 C.J.S. *Boundaries* § 79 at 652 (1938). The establishment of a boundary line between adjacent lots by recognition and acquiescence involves the idea that the adjacent owner, with knowledge of the line so established and the possession so taken, assents thereto, *or that circumstances exist from which assent may be reasonably inferred. Hakanson v. Manders,* 158 Neb. 392, 63 N.W.2d 436 (1954).

"Some of the cases require this acquiescence, *in order to be conclusive,* to have continued for the

length of time fixed by the statute of limitations for the recovery of land, not, apparently, on the view that the case is within the statute, but by way of analogy thereto. Others suggest no such requirement, it being stated merely that the acquiescence in the line must have continued for 'a considerable time,' or equivalent language being used, and no rule as to the number of years being laid down." (Emphasis supplied.) 2 Tiffany, *supra* at 684-85.

In that same treatise, Nebraska is listed as supporting both the rule that acquiescence must continue for a period equal to that fixed by the statute for gaining title by adverse possession, and the opposite rule that no particular number of years is necessary.

Cited in support of the first proposition is the case of *Romine v. West,* 134 Neb. 274, 278 N.W. 490 (1938). "A thorough annotator states: 'The rule has been announced and reiterated that, where the owners of adjoining land occupy their respective premises up to a certain line, which they mutually recognize and acquiesce in as the boundary line for a long period of time,—usually the time prescribed by the statute of limitations,—they and their grantees are precluded from claiming that the boundary line thus recognized and acquiesced in is not the true one, although such line may not be in fact the true line according to the calls of their deeds.' 69 A.L.R. 1491.

"Another competent commentator says: 'It is very generally held, however, that where the recognition and acquiescence have continued beyond the period fixed by the statute of limitations the *presumption becomes conclusive,* irrespective of the correctness of the boundary acquiesced in.' 9 C.J. 245.

. . . .

"The rule long established in this jurisdiction is that where a boundary, supposed to be the true line established by the government survey, is acquiesced

in by the adjoining owners for more than ten years, *it is conclusive of the location."* (Emphasis supplied.) *Id.* at 276-77, 278 N.W. at 491, citing in support thereof *Clark v. Thornburg,* 66 Neb. 717, 92 N.W. 1056 (1902). In *Clark,* we said: " 'Where a corner supposed to have been established by the government in the surveys of public lands has been acquiesced in by adjoining owners of such land for *nearly ten years,* and improvements made and the land broken up to the line thus established, *there is a presumption* in favor of such corner being the true one, which can only be overcome by clear proof that it was not established by the government.' [Citation omitted.] When a line so established is acquiesced in by the parties for a period equal to that fixed by the statute for gaining title by adverse possession, *it is conclusive* of the location of the boundary line." (Emphasis supplied.) *Id.* at 719-20, 92 N.W. at 1057.

That Schram, by his actions and testimony, acquiesced in the fence line as the true boundary between his property and that of Mable Melia seems to be beyond dispute. It was only when he discovered, quite by accident, that there had been an error in the proceedings by which he unwittingly was able to obtain legal title to property otherwise accepted by everyone as belonging to Mrs. Melia that he ever wavered in his acknowledgment of the established line. Whether the time that the acquiescence existed was sufficient to amount to "nearly ten years" must be determined in each case from the facts and circumstances therein existing. " 'Where the true line can be ascertained, and parties by mistake agree upon an erroneous line as their boundary, believing it to be the true line, they will not be concluded by such agreement from claiming to the true line when discovered, unless the statute of limitations has run, *or equitable reasons exist for establishing an erroneous line.'* " (Emphasis supplied.) *Kimes v. Libby,* 87 Neb. 113, 116, 126 N.W. 869, 870

(1910). Such equitable reasons do exist in this case.

We hold that the applicant, Mable Melia, is entitled to the benefit of the presumption that the fence line acquiesced in by the parties for these several years is the true line, the same not having been overcome by "clear proof" to the contrary on the part of Schram. Title is ordered quieted in Mable Melia as to the property described as: "Referring to the center quarter corner of Section 15, Township 13 North, Range 10 East of the 6th P.M., Sarpy County, Nebraska; thence due South (assumed bearing) along the East line of the Southwest Quarter (SW¼) of said Section 15, a distance of 400.85 feet to the point of beginning; thence due South along the East line of the Southwest Quarter (SW¼) of said Section 15 a distance of 210.15 feet; thence due West 254.48 feet; thence due North 210.15 feet; thence due East 254.48 feet to the point of beginning. The East 33 feet of this tract is reserved for County Roads right-of-way," as alleged in her first amended application.

To the extent thus modified, the judgment of the District Court is affirmed.

AFFIRMED AS MODIFIED.

CLINTON, J., participating on briefs.