NATIONAL MORTGAGE LOAN COMPANY, APPELLANT, V. ERNEST G. HURST ET AL., APPELLEES.

FILED JULY 1, 1930. No. 27001.

*Hartigan & Fouts,* for appellant.

*Mullen & Morrissey* and *J. H. Barry,* contra.

Heard before GOSS, C. J., ROSE, DEAN, THOMPSON, EBERLY and DAY, JJ., and FITZGERALD, District Judge.

FITZGERALD, District Judge.

This is an action by the National Mortgage Loan Company, appellant, to foreclose two mortgages on a farm in Saunders county, Nebraska.

The petition sets out the mortgages and the history of the mortgages and notes coming into the hands of plaintiff,

through succession of plaintiff to the rights in notes and a mortgage dated September 1, 1922, on which it is now claimed there is due $17,447, and by assignment of notes and a mortgage of same date, by one W. S. Collett, the mortgagee, on which it is now claimed there is due the sum of $14,584.

Defendants' answer reveals that the notes and mortgages were made substantially as alleged, but they contend that these notes and mortgages were based on fraud, and pray for an accounting of the payments made by defendants in the transaction and for judgment in whatever amount is found to be due, together with the cancelation of the notes and mortgages.

The entire record discloses that Bankers Automobile Insurance Company and Bankers Fire Insurance Company were organized under the laws of the state of Nebraska. It also discloses that both concerns were manned by substantially the same crew, though the positions of the men were somewhat different in the two concerns. Both companies used the same offices.

Plaintiff herein is the successor to Bankers Fire Insurance Company. The Bankers Automobile Insurance Company was taken over by the state department of trade and commerce.

The consideration for the notes and mortgages before us was purchase money for stock in both of the above concerns during the year 1918 and spring of 1919. In addition to this stock in the two companies there was a $3,000 mortgage on defendants' farm. This mortgage was taken up and paid, apparently by plaintiff's predecessors, to clear the title of the farm for their mortgage, and this amount was added to the original mortgage out of which this action arises. The testimony is that the $3,000 mortgage had been reduced by payments to $2,000 or $2,500, but leaves us there to conjecture.

Plaintiff's counsel in his brief and in his oral argument is not strenuous in urging the good faith of sale of stock in the Bankers Automobile Insurance Company, but is vigorous in his claim that the Bankers Fire Insurance Com-

pany was free from wrongful conduct. We are unable to distinguish between the methods used by the two concerns. True, it was not the same salesman who persuaded defendants to purchase the stock in the two concerns, but they were from the same office and were sent out by the same men, and their methods of salesmanship and persuasion were practically identical. In addition to this, both concerns operated at defendants' home through one Emil Benson, a banker at Wahoo, who took care of defendants' paper. The undisputed testimony is that defendant Ernest G. Hurst gave checks aggregating many thousand dollars when there was no money in the bank nor any funds available or in sight to meet them, and still Benson and the salesman, in each instance, delivered the stock and months afterwards arranged the notes and mortgages. There was originally one mortgage, which was split solely for negotiation convenience. We are driven to conclude that the transactions between defendants and the automobile insurance company and between defendants and the fire insurance company were one continuous transaction and all grounded in fraud. Equity will not allow corporate forms to serve as a cloak under which to perpetrate fraud, but will examine the whole transaction.

This court has already held that the same methods employed in the sale of the stock were fraudulent, in cases where the evidence was identical with that disclosed in this record, and we find it unnecessary to repeat it. Therefore, we must conclude that the trial court properly denied the decree of foreclosure.

We further hold that the doctrine of estoppel is not available to plaintiff. It is conclusively manifested by the record that defendant Ernest G. Hurst's participation in the Scow litigation was not his act, but was the act of plaintiff herein or its predecessor, and there is no justification for a holding that plaintiff is not bound by its predecessor's conduct in this matter. "Equity seeks the real and substantial rights of the parties, and applies the remedy in such manner as to relieve those having the controlling equities." *Weckerly v. Taylor*, 77 Neb. 886.

We are not satisfied with the testimony on the amounts paid by defendants in money and bonds, nor the testimony as to the extent of the mortgage on defendants' farm at the beginning of their dealings in this stock, but we assume that counsel on both sides have done their best with the material at their disposal. It appears that the amount paid by defendants would approximately balance the mortgage, and we hold that it does balance and satisfy the same; and we affirm the decision of the trial court as to the equities of the parties, but direct the trial court to cancel the notes and mortgages and to enter a decree quieting the title to the land in controversy in defendants, at plaintiff's cost.

The certificates of stock are either already at plaintiff's disposal or are in the records of this case and may and should be turned over to plaintiff.

The cause is remanded to the trial court, with directions to enter a decree according to this opinion.

REMANDED, WITH DIRECTIONS.