PLATTE VALLEY BANK OF NORTH BEND, A CORPORATION,
APPELLEE, V. NORMAN P. KRACL, APPELLANT.
174 N. W. 2d 724

Filed February 17, 1970.   No. 37266.

John L. Cutright, for appellant.

Kerrigan, Line & Martin, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

WHITE, C. J.

This is an action in replevin filed by the plaintiff bank to recover a pick-up truck upon which it held first and second liens. The question presented is whether, on default, the plaintiff as a security grantor is entitled to possession of the motor vehicle as against a subsequent levying creditor, without first proceeding against other property covered by the plaintiff bank's original security agreements. The district court in its judgment held that plaintiff was entitled to possession of the vehicle, but that before plaintiff could dispose of the vehicle it should proceed against other property covered in another security agreement. We reverse the judgment and remand this portion of the cause to the district court.

The facts have been stipulated as follows: On August 2, 1966, and August 3, 1966, one Pedro Leal executed and delivered to plaintiff, a Nebraska corporation, for valuable consideration separate financing statements and security agreements which were filed for record on August 3 and 8, 1966. These documents constituted first and second liens on a Chevrolet pick-up truck. On or about February 15, 1968, defendant, in this case, recovered a judgment on a promissory note against the bank's debtor, and in this action had an execution issued and levied on the pick-up truck. At the execution sale on March 19, 1968, plaintiff's cashier announced to all persons present that plaintiff had two liens filed and shown on the face of the certificate of title to the vehicle being sold in excess of plaintiff's believed value of that vehicle. This announcement was made twice, defendant's attorney hearing the announcement both times. Plaintiff made no demand for possession and no court

action was commenced prior to the filing of this action for replevin.

Plaintiff's debtor defaulted, and on May 1, 1968, plaintiff notified defendant in writing of its intention to exercise its right, under the security agreements and financing statements, specifically to take possession of the motor vehicle in question. Plaintiff has other security in addition to the truck involved in this proceeding, and defendant refused to surrender possession of the vehicle.

It would appear there is no question but that the plaintiff bank has an enforceable lien and that it is superior to that of the defendant judgment creditor. However, it is defendant's contention that the equitable doctrine of marshaling assets may or can be applied in a replevin action when the senior lien holder has additional security available to which a junior lien holder has no access. To this contention there are three related answers: (1) The sole issue ordinarily litigated in a replevin action is the right to the immediate possession of the property. Ordinarily questions of title, or the total adjustment of the rights of the parties with relation to the whole transaction, abide disposition in other jurisdictional forums; (2) the motor vehicle lien statute, section 60-110, R. R. S. 1943, establishes the plaintiff's right to priority in this case, giving him an absolute statutory right to the immediate possession of the property in question; and (3) under article 9 of the Nebraska Uniform Commercial Code, the plaintiff has an absolute right to priority, again giving him a statutory right to the immediate possession of the property.

The right to possession here is founded upon a specific motor vehicle chattel mortgage covering one vehicle only, a 1966 Chevrolet, secured by an installment loan in the amount of $2,485.44 dated August 3, 1966. This mortgage was signed and executed on August 3, 1966. This instrument provides, inter alia, "and upon default Secured Party shall have the *immediate right to the possession* of the Collateral." Our Nebraska motor vehicle

law, Chapter 60, R. R. S. 1943, establishes a special law governing title, the priority of liens, and the right to possession of motor vehicles. Section 60-110, R. R. S. 1943, provides in part that: "Any mortgage, conveyance intended to operate as a mortgage, trust receipt, conditional sales contract, or other similar instrument covering a *motor vehicle* * * * if a notation * * * (of such instrument) has been made by the county clerk on the face * * * (of the certificate of title), shall be valid as against the creditors of the mortgagor, whether armed with process or not, and subsequent purchasers, mortgagees and other lienholders or claimants *but otherwise shall not be valid against them.* All liens, mortgages and encumbrances, noted upon a certificate of title, *shall* take priority according to the order of time in which the same are noted thereon by the county clerk." (Emphasis supplied.)

The statutory history reveals a legislative desire to separately classify and establish a procedure for the enforcement of liens on motor vehicles. It is clear in the modern context that problems of increased mobility, accelerated depreciation, difficulty of identification, simplicity, celerity, and certainty in credit policy, and other considerations have resulted in a legislative determination to clear up the previous uncertainties and confusion in the law by the enactment of a comprehensive statute. The statutory scheme creates a simple method that will accomplish a general public interest in maintaining simplicity and celerity in the determination of the right to the uninterrupted possession and use of motor vehicles and the facilitation of the operation of the credit structure supporting motor vehicle financing. The statute clearly establishes a procedure by which a lienor can secure his interest in the vehicle, and unless he does so, his lien shall not be enforceable against subsequent creditors of the mortgagor. But if such procedure is followed, however, then the lienor's interest shall take priority. It would appear without question that the

plaintiff, under the clear provisions of the statute, has a valid and enforceable prior lien with the immediate right to possession. It appears further that the declared statutory policy of this state is to enforce the clear, unambiguous, and specifically recited agreement between the parties present in this transaction.

There is another basis upon which defendant's argument must be rejected. Article 9 of the Nebraska Uniform Commercial Code explicitly governs secured transactions. The debtor in this case has defaulted, and upon default a secured party may enforce his security interest by any available judicial procedure. § 9-501, U. C. C. On default a secured party has the right to take possession of the collateral. § 9-503, U. C. C. These sections clearly show that an action in replevin when the debtor has defaulted is proper, and allow such a procedure if plaintiff is in fact a "secured party."

Under section 9-105 (1) (i), U. C. C., a secured party is "a lender * * * in whose favor there is a security interest, * * *." Security interest as defined in section 1-201 (37), U. C. C., is an interest in property "which secures payment or performance of an obligation." Clearly, the bank qualifies as a secured party with a security interest in the property here in question. The bank's interest is perfected under section 9-303 (1), U. C. C., since financing statements were filed pursuant to section 9-302 (1), U. C. C., and the interest has attached under section 9-204 (1), U. C. C. Since the bank filed first, and perfected first, then clearly it has priority under section 9-312, U. C. C. Priority under this section, and the right to take possession of the collateral under section 9-503, U. C. C., establishes a *statutory* right which would be defeated if plaintiff were forced to marshal assets.

We examine the doctrine of marshaling assets as it applies to the particular facts in this case. The district court's order did not require a resort to other security in the *same* agreement, but rather required a resort by

the plaintiff to security covered in an independently executed instrument on other personal property and signed and executed on a different date. This mortgage, in the sum of $1,100, covered two 1956 and 1957 vehicles together with some trailer equipment and 16 pigs. This petition was filed on May 8, 1968, at which time the equipment would be 11 and 12 years old, respectively, and the pigs about 2 years of age.

The signed and executed agreement between the parties concerning which there is no dispute, reads in part as follows: "The taking of this security agreement shall not waive or impair any other security said Secured Party may have or hereafter acquire for the payment of the above indebtedness, nor shall the taking of any such additional security waive or impair this security agreement; but said Secured Party may resort to any security it may have *in the order it may deem proper,* and notwithstanding any collateral security, Secured Party shall retain the rights of setoff against Debtor." (Emphasis supplied.) Also the agreement contains the heretofore-recited provision for immediate possession upon default. The equitable doctrine of marshaling assets rests upon the basic principle that a senior creditor who has two funds from which he may satisfy his debt may not defeat another junior creditor who may resort only to one of these assets. Anthes v. Schroeder, 68 Neb. 370, 94 N. W. 611; Meyer v. United States, 375 U. S. 233, 84 S. Ct. 318, 11 L. Ed. 2d 293. It is not founded upon the law of contract or liens but rather the doctrine is based in equity and is designed to promote fair dealing and justice.

But the rule is well settled in equity that the doctrine of marshaling assets is not an absolute right, and cannot be invoked or applied so as to defeat *statutory rights.* 55 C. J. S., Marshaling Assets and Securities, § 1b, p. 958. Following the principle announced in this general rule our court has held that the rule as to marshaling assets has its proper exceptions and limitations, and

where, by reason of the circumstances in a particular case, it would be inequitable and work an injustice to require one of two creditors having a lien on two securities to first resort to the one on which the other creditor has no lien, a court of equity will not enforce the doctrine of marshaling assets. Anthes v. Schroeder, *supra*. See, also, 55 C. J. S., Marshaling Assets and Securities, §§ 1 to 4, pp. 956 to 965.

Securities will not be marshaled to the injury of one over whom the party asking the marshaling has no superior equity. 55 C. J. S., Marshaling Assets and Securities, § 1b, p. 961. We further note that the court's order in this case requiring resort to the property alienated in the other security agreement is, in effect, an order for a foreclosure of the security agreements in order of their alienation. This result cannot be reached under the doctrine of marshaling assets because it must be based upon a contractual agreement, whereas the agreement of the parties in the present case is directly to the contrary. Nor is there any allegation, proof, or finding by the court that the value of the chattels secured in the other mortgage sought to be marshaled is substantially or wholly sufficient to satisfy the paramount lien of the mortgage and issue in this action. This is fatal. 55 C. J. S., Marshaling Assets and Securities, § 1b, p. 961; Becker Roofing Co. v. Farmers' & Merchants' Bank of Piedmont, 223 Ala. 132, 134 So. 635; Bradford Realty Corporation v. Beetz, 108 Conn. 26, 142 A. 395; Bewley Mills v. First Nat. Bank (Tex. Civ. App.), 110 S. W. 2d 201; Meyer v. United States, *supra*. It should not be applied where the parties themselves have by contract fully defined their rights with reference to the priority of the marshaling of their assets. 55 C. J. S., Marshaling Assets and Securities, § 1b, p. 961; Boykin v. First State Bank of Comanche (Tex. Civ. App.), 61 S. W. 2d 126.

The exceptions to the application of the doctrine of marshaling assets, from a review of all of the cases, has been comprehensively stated in 55 C. J. S., Marshaling

Assets and Securities, § 4, p. 963, as follows: "Such relief will not be given if it will hinder or impose hardships on the paramount creditor, or *inconvenience him in the collection of his debt, or deprive him of his rights under his contract,* by displacing or impairing a prior acquired lien or contract right; nor will it be given on any other terms than giving him complete satisfaction. The doctrine is never enforced where it will operate to suspend or put in peril the claim of the paramount creditor, or cause him risk of loss, or where the fund to be resorted to is one which may involve such creditor in litigation, *especially if final satisfaction is somewhat uncertain,* or where the effect of applying the doctrine would be to *compel him to proceed by an independent action,* such as one for the foreclosure of a mortgage, since that would place an additional burden on him." (Emphasis supplied.)

The application of the above principles to the facts in this case is obvious. There is no proof of the value of the chattels in the other mortgage sought to be marshaled. It would appear reasonable that it was far short of satisfying the obligations of either mortgage conferring an aggregate total indebtedness with interest of something over $4,000. It would be contrary to the express agreement of the parties. It would clearly delay the paramount creditor and require him to resort to conjectural and speculative independent legal action. The identification and impounding of the pigs involved in the first mortgage is speculative. Plaintiff would have the additional burden of advancing the costs, examining and evaluating the burden of an independent legal action, and the possible appeals and delay involved. Such a result if applied generally would adversely affect the extension of credit on motor vehicles and perhaps materially impair the extension of credit by a bank or loan company on property other than motor vehicles to the debtor. It would extend the period of litigation and possible controversy. The statute on governing the extension of

credit on motor vehicles was enacted to simplify and clarify situations of this type. Here the parties themselves have done all they can, by an explicit provision in the contract, to enforce the policy of the statute and to forbid the delay and uncertainty of a double and delayed foreclosure procedure and the right to possession. Such a result flies in the face of the express provisions of the contract and flies in the face of the fundamental rule that a judgment creditor cannot become invested with a right that his judgment debtor himself did not have. Finally, it is apparent that the defendant in this action has not even remotely met the burden of proof in order to affirmatively demonstrate that he is entitled to the equitable benefits of the doctrine of marshaling assets.

For these reasons it is clear that the plaintiff has a priority interest in the property in question and is entitled to the immediate right to possession; and that it is not required to marshal assets in the other security interest in this replevin action. This is particularly true in this case because the defendant judgment creditor prays only for dismissal of this replevin action in his answer.

For the reasons given the cross-appeal of the plaintiff is sustained herein, and that part of the judgment decreeing that the plaintiff was entitled to the possession of the vehicle is affirmed, and the portion of the judgment decreeing that the plaintiff before disposing of the vehicle should proceed against the other property of the judgment debtor is reversed. The judgment of the district court is affirmed in part and reversed in part and the cause remanded with directions to enter a judgment consistent with this opinion.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED WITH DIRECTIONS.

SPENCER, J., concurs in the result.