ORVILL J. KLECAN, APPELLEE, v. MARY E. SCHMAL ET AL., APPELLEES, IMPLEADED WITH J. D. LOFING EL AL., APPELLANTS.

241 N. W. 2d 529

Filed May 5, 1976. No. 40354.

Ralph J. Fischer of Everson, Noble, Wullschleger, Sutter & Fischer, for appellants.

C. E. Danley, for appellee Klecan.

Heard before WHITE, C. J., McCOWN, and BRODKEY, JJ., and RICHLING, District Judge.

BRODKEY, J.

J. D. Lofing and Richard Weers, referred to in the record of this case and also in this opinion as "objectors," are residents, landowners, freeholders, and taxpayers in School District No. 103J, known and referred to as the Diller District, in Jefferson County, Nebraska. They appeal to this court from a judgment entered by the District Court for Gage County on August 13, 1975, granting and approving a freeholder's petition filed by Orvill J. Klecan under the provisions of section 79-403(1), R. R. S. 1943, to transfer approximately 200 acres of land owned by Klecan from Diller School District No. 103J, to Odell School District No. 74, in Gage County. The matter was originally heard before a statutory board consisting of the county superintendent, clerk, and treasurer of each county. The six-member board was unable to reach a decision, the vote being 3 to 3. A timely appeal was then taken to the District Court for Gage County, as provided by statute.

During the course of the appeal, objectors filed formal objections to the transfer of Klecan's land from the

Diller district to the Odell district and prayed that Klecan's petition be denied. Following a hearing at which evidence was taken, the court entered its judgment previously referred to, ordering that as of August 13, 1975, the northeast quarter and the southeast quarter of the northwest quarter, all in Township 1 North, Range 5 East of the 6 P.M. Gage County, Nebraska, the legal description of Klecan's property involved in this transfer proceeding, "be and is hereby transferred from School District No. 103 of Jefferson County, Nebraska, and set over into and made a part of School District No. 74 of Gage County, Nebraska." Objectors' motion for new trial was overruled, and they then perfected their appeal to this court. We affirm.

There is little question that Klecan met the basic, statutory requirements as set out in section 79-403(1). Even objectors admit in their answer filed in District Court that the property, as legally described in Klecan's petition, is: "a) Owned and in possession of the petitioner; b) Located in School District No. 103J, a class II school district, Jefferson County, Nebraska, being a district that adjoins School District No. 74, a class III school district, Gage County, Nebraska, the district to which such land is proposed to be attached; and c) Has children of school age who reside thereon with their parents." The record clearly supports objectors' admissions, as well as additional facts. The evidence clearly shows that petitioner owns two quarter sections of land located in District 74; and, in fact, pays taxes to both school districts to support both schools. The seven Klecan children attended the Odell district school during the 1973-1974 school year and also the 1974-1975 school year, and at present he has six children ranging in ages from 6 to 17 years enrolled in the Odell district. He has paid tuition for his children for 2 consecutive years in the Odell district. The 200 acres owned by Klecan and involved in this proceeding were purchased by him in 1973, approximately 2½ years prior to the

trial in District Court. That property had been a part of the Odell district until it was transferred to the Diller district in 1954. It was part of the Diller district when Klecan purchased it and moved there with his children.

The Diller district is a Class II school, and the Odell district is a Class III school. The classification of school districts in this state is set out and defined in section 79-102, R. R. S. 1943, which states in part: "(2) Class II shall include any school district embracing territory having a population of one thousand inhabitants or less that maintains both elementary and high school grades under the direction of a single school board; (3) Class III shall include any school district embracing territory having a population of more than one thousand and less than fifty thousand inhabitants that maintains both elementary and high school grades under the direction of a single board of education; * * *."

Although objectors allege numerous assignments of error which they claim require a reversal of the decision of the District Court and a denial of the transfer of the property, they concede that the primary specific issues are whether Klecan sustained his burden of proof with respect to establishing compliance with the mandatory requirements of section 79-403(1), particularly as to whether he sustained his burden of showing that the transfer is in the best "educative" interests of petitioner and his children.

The case law with reference to section 79-403(1) has recently been synthesized and explained by this court in Friesen v. Clark, 192 Neb. 227, 220 N. W. 2d 12 (1974); and both objectors and Klecan cited and discussed this case extensively in their briefs and in oral arguments. In Friesen we held that under section 79-403, "the best interest of the petitioner or petitioners" meant the best "educative" interest, and not the best "noneducative" interest. We held that the Legislature did not intend to enact a statute concerned with schools, distances, and

education of pupils for the sole purpose of making convenient allocations of land to school districts based upon individual preferences or secular business reasons of owners having nothing to do with educational efficiency. In that case, as is true in the instant case, evidence was adduced and received with reference to certain matters which were clearly not connected with the educative interest of the petitioner. We did not consider such evidence in that case and shall not do so in this case.

In laying down guidelines, we stated in Friesen as follows: "It appears therefore that so far as we are given any help or guidance by the cases referred to above, a freeholder's petition under section 79-403, R. R. S. 1943, must be supported by an adequate showing that the purposed transfer of land is justified in relation to the controlling educational factors regarding the convenience, necessity, or welfare of the pupil or pupils involved. Such a showing must include a demonstration of significant differences in the class, accreditation, leadership, management, curricula, and/or efficiency of the schools involved. Other factors such as the size of the schools involved or minor differences in extracurricular activities offered, although they may properly be considered in ruling on such a petition, are not alone enough to justify a transfer of land under that statute."

Objectors contend that the use of the word "must" in the sentence: "Such a showing must include a demonstration of significant differences in the class, accreditation, leadership, management, curricula, and/or efficiency of the schools involved" makes it mandatory that the court consider all the above listed elements in making its determination, although they concede that use of the term "and/or" introduces an element of ambiguity in their argument. We do not agree with objectors' contention; nor do we believe it is necessary that the court, in making its final determination, afford equal weight and significance to each of the listed items.

Significantly, the court also stated that other factors may properly be considered in ruling on such a petition, but are not *alone* enough to justify a transfer of land under that statute.

While it is true that in the construction of statutes, the use of the word "must" generally indicates a mandatory duty, this is not always the case. In Jones v. First Minneapolis Trust Co., 202 Minn. 187, 277 N. W. 899 (1938), the court stated: "Provisions which are mandatory in form are often held to be directory, and those which are directory in form are often held to be mandatory because such words as 'may,' 'shall,' 'must,' and 'will' are often used without discrimination. All of them are elastic and frequently treated as interchangeable." See, also, Arkansas State Highway Commission v. Mabry, 229 Ark. 261, 315 S. W. 2d 900 (1948); Tosti v. Sbano, 11 N. Y. Supp. 2d 321, 170 Misc. 828 (1939). In the instant case, we believe the word "must" should be interpreted as "may" to indicate that the listed items are some of the matters which may be considered by the court in making its on-balance determination of what is for the best educative interest of the petitioner or his children.

With reference to the use of the phrase "and/or," we have stated in connection with the drafting of statutes that the use of the phrase is not to be recommended as it leads to uncertainty, ambiguity, and multiplicity. Drummond v. City of Columbus, 136 Neb. 87, 285 N. W. 109 (1939). Nevertheless the phrase is still frequently, though perhaps not advisedly, used in the preparation of contracts, negotiable instruments, and similar documents. Where so used, the commonly accepted meaning is that "and/or" means either "and" or "or," or both. Poucher v. State, 46 Ala. Cr. App. 272, 240 S. 2d 694, 695 (1970); Longacre v. Knowles, 333 S. W. 2d 67 (Mo., 1960); Oman Constr. Co., Inc. v. Tennessee Cent. Ry. Co., 212 Tenn. 556, 370 S. W. 2d 563 (1963); Thomas v. Penn Mut. Fire Ins. Co., 244 S. C. 581, 137 S. E. 2d 856

(1964). Applying this generally accepted interpretation to the language from Friesen, above quoted, it is clear that the items listed in the portion of the opinion quoted above may be considered either conjunctively or disjunctively.

With the above as a background, let us now examine the record in this case to make a comparison of the two school districts involved. The Diller district, in which the land is presently located, is a Class II district; while the Odell District, to which a transfer is requested, is a Class III district, normally indicating a larger population. Both districts are accredited K-12 schools, which means that education is provided from kindergarten through the twelfth grade. However, in the Diller district only two out of eighteen teachers (11.1 percent) have Masters degrees or higher, with three additional teachers (a possible total of 27.7 percent) working on higher degrees. By comparison, in the Odell district, five out of twenty-two teachers (22.7 percent) have higher degrees, with five additional teachers (a possible total of 45.4 percent) working on higher degrees. In the Diller district the teacher-student ratio is 1/10.6, meaning that there is one teacher for every 10.6 students. The District Judge found that in the Odell district the teacher-student ratio was 1/7.36, although figures contained in exhibit 1 received in evidence indicate that the court may possibly have erred in the school census figures it employed to reach its conclusion, and that the ratio may have been as high as 1/11.36. With regard to the management of the schools, the superintendent of the Diller district has 4 years experience at Diller, while the superintendent of the Odell district has 3 years experience at Odell. With regard to school facilities and debts, the record reflects that Diller has a grade school building, a high school building, a voc-ag shop, an art and math building, and a music building. Only the music building is not yet paid for. The record does not reflect what the facilities or outstanding indebtedness

of the Odell district are, and hence it is not possible to make a comparison on those items. With reference to the curriculum, the superintendents of both schools testified that the curricula were comparable. However, it does appear that the Diller district offers voc-agricultural, or future farmers of America courses. The Odell district does not have such courses. There is evidence in the record that 34 percent of the graduates of the Diller district go on to college. There is no comparable evidence submitted with reference to the Odell district. Finally, there is evidence with respect to transportation to and accessibility of the two schools. It appears that buses to both schools run by the Klecan residence. The Diller school is from 3 3/4 to 4 miles from his residence, whereas the Odell district is 7½ miles distant.

In his judgment entry of August 13, 1975, the District Judge found that while both districts maintain accredited K-12 schools and have substantially similar curricula the educative conditions in the Odell district (No. 74) were superior to those in the Diller district in two respects. First, that the Odell district, having 162 pupils and 22 teachers, has a teacher-pupil ratio of 7.36; while the Diller district, having 191 pupils and 18 teachers, has a teacher-pupil ratio of 10.6. The lower ratio indicates fewer pupils per teacher, and a corresponding capacity of the faculty to devote more time per pupil. As previously indicated, the court may have erred in determining his teacher-pupil ratio using as its basis of computation 162 pupils. According to the school census, exhibit I, this appears to be the total number of pupils attending the Odell district within the ages of 7 through 15 years. The same census shows 250 students in attendance, in the category of 5 through 18 years. Secondly, the court found that the educational qualifications of the faculty of the Odell district are significantly greater than those of the Diller district because of the much higher percentage of the teachers that both have and are working toward advanced degrees.

Finally, the court found that, while not a controlling consideration, petitioner Klecan's children have attended school in District No. 74 prior to his purchase of the farmland involved and his moving thereon; and that subsequently the children have been attending District No. 74 on a tuition basis. The court also found that continuing such children in District No. 74 will preserve for them such benefits as may accrue from continued schooling in the same overall curriculum and the consistencies inherent therein, with the continuing student and faculty associations resulting from continued attendance in the same system. On the basis of those educative interests, the court concluded that the transfer of petitioner's property from School District No. 103J to School District No. 74 should be permitted, and so ordered.

While the case is concededly a close one, we believe the finding and conclusions of the trial court are valid and meritorious. We agree that in significant respects, the Odell school, on balance, is superior to the Diller school, and that the transfer would be in the best educative interests of the petitioner and his children. In reaching this conclusion, we are mindful of the scope of review in appeals in cases such as this. We have held that the action of the board under section 79-403, R. R. S. 1943, is an exercise of a quasi-judicial power, equitable in character, and upon appeal therefrom to the District Court the cause is triable de novo as though it had been originally instituted in such court, and upon appeal from the District Court to this court it is triable de novo as in any other equitable action. Friesen v. Clark, *supra*; McDonald v. Rentfrow, 176 Neb. 796, 127 N. W. 2d 480 (1964); Roy v. Bladen School Dist. No. R-31, 165 Neb. 170, 84 N. W. 2d 119 (1957); § 25-1925, R. R. S. 1943. This does not mean, however, that we are powerless to examine the conclusions of fact in the trial court. This court has held many times that even when the case is triable de novo, the superior position

of the original trier of fact is to be respected and accorded great weight. Crete Education Assn. v. School Dist. of Crete, 193 Neb. 245, 226 N. W. 2d 752 (1975). We do so in this case.

The judgment of the District Court is affirmed.

AFFIRMED.

BOSLAUGH, J., participating on briefs.