LARRY D. MILLER AND SHIRLEEN D. MILLER, APPELLEES, v. SCHOOL DISTRICT NO. 69 OF PAWNEE COUNTY, NEBRASKA, ET AL., APPELLANTS.

303 N.W.2d 483

Filed March 13, 1981. No. 43292.

Everson, Noble, Wullschleger, Sutter & Sharp for appellants.

Dalke & Smith for appellees.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, BRODKEY, WHITE, and HASTINGS, JJ.

KRIVOSHA, C.J.

The appellants, School District No. 69 of Pawnee County, Nebraska, and certain of its patrons, individually and as taxpayers, residents, and electors of said district (hereinafter jointly referred to as the Lewiston District), appeal from a judgment entered by the District Court for Gage County, Nebraska, upholding the decision of the statutory board consisting of the county superintendents, clerks, and treasurers of Gage County and Pawnee County, Nebraska, (Neb. Rev. Stat. § 79-403 (Reissue 1976)) approving and granting the transfer of certain real estate owned by appellees, Larry D. Miller and Shirleen D. Miller (Millers), from the Lewiston District to School District No. 166 of Gage County, Nebraska (Filley District). For reasons more particularly set out hereinafter, we affirm the judgment of the trial court.

The evidence discloses that the Millers own 160 acres of land in Gage County, Nebraska, where they, together with their two children, have resided for more than 6 years. The children, Nichole and Aaron, both attend school in the Filley District and during the 1979-80 school year were in second grade and kindergarten, respectively.

The Millers' residence is 5½ miles from the Filley school and 11 miles from the Lewiston school. The Millers' land was within the boundaries of the Lewiston District for at least 2 years prior to the commencement of this action, and the Millers therefore paid tuition to the Filley District during the 1977-78 and 1978-79 school years to allow Nichole to attend the Filley school. Both children attended the Filley school during the 1979-80 school year. The Lewiston District adjoins the Filley District, and prior to its transfer the Millers' land was within 1 mile from the

boundary of the Filley District. Each district is an accredited Class II school district (Neb. Rev. Stat. § 79-102(2) (Reissue 1976)), although at the time the statutory board authorized the transfer on March 2, 1979, the Filley District was not then an accredited school district.

The record further establishes that the Filley District had made application for accreditation prior to March 2, 1979, the date of the transfer by the statutory board, and had completed all requirements for accreditation, though in fact the accreditation had not yet been granted. On March 8, 1979, the accreditation committee of the State Department of Education evaluated the Filley District and ascertained that there was compliance with the accreditation requirements. By reason of statute (Neb. Rev. Stat. § 79-403.01 (Reissue 1976)) the order of the statutory board transferring the Millers' land to the Filley District was to be effective June 1, 1979. On June 8, 1979, the State Department of Education, upon receipt of the accreditation committee's certification that the Filley District had fulfilled all requirements and should be accredited, formally granted the Filley District accreditation status effective July 1, 1979.

On June 22, 1979, a petition was filed in the District Court for Gage County, Nebraska. In late August of 1979, when classes resumed for the 1979-80 school year, the Millers' children continued to attend school in the Filley District. Trial was had in this matter on November 13, 1979, and judgment entered by the District Court on January 14, 1980.

The record further establishes certain differences between the Lewiston District and the Filley District, including the fact that for the 1979-80 school year the Filley and Lewiston District enrollments were 151 students and 209 students, respectively. The Filley District had 16 teachers and the Lewiston District had 17 teachers. The Lewiston District maintains that, in fact, they had an additional kindergarten teacher

whose name was not listed on an exhibit submitted at the trial. It appears from the record, however, that the additional teacher whose employment is disputed was approved by the Lewiston District on the night prior to the trial in the District Court and was not to begin work until January of 1980. Likewise, the evidence discloses that the teaching faculty of the Filley District has more teachers than the Lewiston District who have earned post-graduate credits at each of several levels, including the obtaining of a master's degree.

In examining the role of the principals of the two districts, it appears that the principal of the Filley District spends over 70 percent of his time in performing his duties as principal, while the principal of the Lewiston District devotes two of seven periods each day teaching class, one period preparing to teach class, and four periods as librarian. It would appear that the Lewiston principal's administrative duties are incidental to her primary function as a classroom teacher and librarian.

The evidence further discloses that the Millers' son, Aaron, was enrolled in the Filley District's kindergarten program during the 1979-80 school year. The Filley District kindergarten program is conducted for one-half day during the entire school year, while the Lewiston kindergarten program is conducted on a full-day basis during just the spring semester. Further, Aaron has been diagnosed as having a speech problem and was receiving continuing speech therapy in the Filley District.

The Lewiston District maintains that the trial court erred in upholding the action of the statutory board for two specific reasons. The first reason was that the Millers failed to sustain their burden of proving that it was in their children's best educative interests to transfer their land from the Lewiston District to the Filley District. The second reason given by the Lewiston District is that the transfer was void because at the time the transfer was author-

ized on March 2, 1979, the Filley District was not then accredited, contrary to the provisions of Neb. Rev. Stat. § 79-1108 (Reissue 1976), which requires in part: "No transfer of property from an accredited school district to a nonaccredited school district of any class shall be permitted."

We shall examine the assignments of error raised by the Lewiston District in reverse order, looking first at Lewiston's contention that the transfer was invalid because of § 79-1108 which prohibits the transfer of land to a nonaccredited school district.

In analyzing this problem and arriving at an appropriate determination, we must first examine various rules and principles by which this appeal must be considered. "We have held that the action of the [statutory] board under section 79-403, R. R. S. 1943, is an exercise of a quasi-judicial power, equitable in character, and upon appeal therefrom to the District Court the cause is triable de novo as though it had been originally instituted in such court, and upon appeal from the District Court to this court it is triable de novo as in any other equitable action." *Klecan v. Schmal*, 196 Neb. 100, 108, 241 N.W.2d 529, 534 (1976). See, also, *Friesen v. Clark*, 192 Neb. 227, 220 N.W.2d 12 (1974). This, therefore, being an equitable action, we must likewise keep in mind the equitable principles under which such an action must be reviewed.

In particular, we note the following principles of equity which control our decision in this case. It is the general rule that if a court of equity has properly acquired jurisdiction in a suit for equitable relief, it may make complete adjudication of all matters properly presented and involved in the case and grant relief, legal or equitable, as may be required and thus avoid unnecessary litigation. See, *Kuhlman v. Cargile*, 200 Neb. 150, 262 N.W.2d 454 (1978); *Sechovec v. Harms*, 187 Neb. 70, 187 N.W.2d 296 (1971). Moreover, it is a common principle of equity that equity delights

to do justice and that not by halves, and when equity once acquires jurisdiction it will retain it so as to afford complete relief. See *Hardt v. Orr*, 142 Neb. 460, 6 N.W.2d 589 (1942). Further, "'[e]quity seeks the real and substantial rights of the parties, and applies the remedy in such manner as to relieve those having the controlling equities.'" *National Mortgage Loan Co. v. Hurst*, 120 Neb. 37, 39, 231 N.W. 519, 520 (1930). See, also, *Empson v. Deuel County State Bank*, 134 Neb. 597, 279 N.W. 293 (1938).

"Technicalities are not favorites of law or equity. Courts relish them as instruments to prevent injustice, but not to defeat justice." *Northwest Ready Roofing Co. v. Antes*, 117 Neb. 121, 219 N.W. 848 (1928) (syllabus of the court). See, also, *Yates v. New England Mutual Life Ins. Co.*, 117 Neb. 265, 220 N.W. 285 (1928). In *Darnell v. City of Broken Bow*, 139 Neb. 844, 854, 299 N.W. 274, 281 (1941), we said: "'Equity looks through forms to substance,' or as stated in similar language, 'A court of equity goes to the root of a matter and is not deterred by forms.'"

With these principles in mind, therefore, we now examine the applicable statutes to determine whether the fact that the Filley District was not formally accredited on March 2, 1979, but was fully accredited prior to the time the children started school in August of 1979 and prior to trial in this matter and prior to the time the court entered its judgment, nevertheless, precludes the transfer of the Millers' property from the Lewiston District to the Filley District. We must, of course, examine the applicable statutes involved because, while equity does indeed seek to do equity, nevertheless, equity follows the law. As we noted in *In re Petition of Ritchie*, 155 Neb. 824, 828, 53 N.W.2d 753, 756 (1952): "'A court of equity, in dealing with legal rights, adopts and follows the rules of law, in all cases to which those rules are applicable, and whenever there is an explicit statute or a direct rule of law governing the case in all its circumstances, a court of

equity is as much bound by it as would be a court of law.'"

The transfer of the Millers' land from the Lewiston District to the Filley District was made pursuant to the provisions of § 79-403, which we have previously held applies. Nothing found within that section requires that the district to which the land is attached must be accredited prior to the transfer. The parties appear to concede that but for the matter of accreditation all of the other formal requirements of the statute were fully met by the Millers at the time the application was filed. If, then, the absence of a formal certificate of accreditation voids the transfer, it must be found elsewhere. The only other applicable statute is § 79-1108, which we have previously held applies to all school districts. *Pribil v. French*, 179 Neb. 602, 139 N.W.2d 356 (1966). A reading of § 79-1108, however, makes it clear that the absence of accreditation does not make the transfer "void," but only "voidable."

Section 79-1108 provides in full as follows: "No transfer of property from an accredited school district to a nonaccredited school district of any class shall be permitted. Any action to set aside the transfer of property from an accredited school district to a nonaccredited school district shall be commenced within four years from the date of the transfer, *otherwise the transfer shall be valid as of the original date of the transfer.* This provision shall apply to all transfers made prior as well as subsequent to February 20, 1974." (Emphasis supplied.) According to Black's Law Dictionary 1411 (5th ed. 1979), the word "void" means: "Null; ineffectual; nugatory; having no legal force or binding effect; unable, in law, to support the purpose for which it was intended." "Voidable," on the other hand, means: "That which may be avoided, or declared void; not absolutely void, or void in itself. That which operates to accomplish the thing sought to be accomplished, until the fatal vice in the transaction has been judicially ascertained and declared.

Slaughter v. Qualls, 139 Tex. 340, 162 S.W.2d 671, 674. It imports a valid act which may be avoided rather than an invalid act which may be confirmed. Paulson v. McMillan, 8 Wash.2d 295, 111 P.2d 983, 985." *Id.* at 1411. As further noted in Black's at 1411: "There is this difference between the two words 'void' and 'voidable': *void* in the strict sense means that an instrument or transaction is nugatory and ineffectual so that nothing can cure it; *voidable* exists when an imperfection or defect can be cured by the act or confirmation of him who could take advantage of it." (Emphasis in original.)

The specific provisions of § 79-1108 must of necessity be considered to be "voidable" and not "void." That which is void could not become valid by the passage of time. Yet, here, we have a statute which provides that even if property is transferred from an accredited school district to a nonaccredited school district, it may be valid if no action is brought within 4 years from the date of the transfer. That clearly describes a voidable transaction rather than a void transaction. While it is true that in the case at bar the action was brought within the 4 years, it is likewise clear that all the steps necessary to satisfy accreditation had been met prior to the date of transfer on March 2, 1979, and, in fact, had been formally acknowledged prior to the time the children commenced school in August of 1979 and well in advance of the time that the District Court was called upon to enter judgment. Appellants conceded at the time of argument to this court that if this court were to hold that the transfer was ineffectual because the district was not formally accredited on March 2, 1979, the most that could be accomplished would be a delay of 1 year in waiving the tuition paid by the Millers to the Filley District. That is to say, if we were to hold that the transfer was invalid for the year 1979-80 as contended by the Lewiston District, the Millers would simply pay tuition to the Filley District for

their children, file another action to transfer their land, and succeed insofar as the question of the accreditation of the Filley District was concerned. Such a situation must of necessity be of the type contemplated by the courts in developing the equitable principles heretofore announced. It would serve virtually no purpose, other than to impose upon the Millers the payment of tuition to the Filley District, for us to strictly enforce the provisions of § 79-1108 because the formal document was not issued until several days after the transfer became effective. We believe that a more practical and reasonable interpretation must be to the effect that where, as here, all the acts necessary to effect accreditation of a school district have been met prior to the statutory board ordering the transfer and, in fact, the formal certification is granted prior to the time the children begin school and prior to the time the District Court acts on the appeal, the issue of the accreditation of the new district must be considered to have become moot and the transfer deemed to be permitted on the question of accreditation.

Having so disposed of that matter, we then turn to the second issue raised by appellants. Appellants maintain that the Millers have failed to sustain their burden of proof in establishing that it is in the best "educative" interests of their children to permit such transfer. While the statute in question, § 79-403, uses the phrase, "the best interest of the petitioner or petitioners," we have heretofore interpreted that to mean the "best educative interest of petitioner or petitioner or petitioners." See *Friesen v. Clark*, 192 Neb. 227, 229, 220 N.W.2d 12, 14 (1974). Our inquiry, therefore, is whether there is sufficient evidence from which we may reasonably conclude that the transfer in this case is indeed in the best educative interests of the petitioners. As we observed in *Klecan v. Schmal*, 196 Neb. 100, 241 N.W.2d 529 (1976), the distinctions

in these cases are rarely, if ever, wide and clear and may not be fully examined and understood except by reviewing the totality of the matter.

Likewise, in the *Klecan* case we noted that while the statute prescribes certain elements which "must" be shown to be of significant difference, the word "must" used in this statute indeed means "may." We said in *Klecan, supra* at 104-05, 241 N.W.2d at 532: "We do not agree with objectors' contention; nor do we believe it is necessary that the court, in making its final determination, afford equal weight and significance to each of the listed items. Significantly, the court also stated that other factors may properly be considered in ruling on such a petition, but are not *alone* enough to justify a transfer of land under that statute." (Emphasis in original.)

Our examination of the record satisfies us that there is a sufficient educative difference to justify the transfer. The relatively short distance between the Millers' home and the Filley District enables the Millers to more easily participate in their children's school activities, certainly in the best educative interests of the children. Likewise, the teacher-student ratio in the Filley District is lower, thereby enabling its teachers to provide a greater amount of individual attention to each student and facilitating the teacher's ability to evaluate and administer each child's education.

The fact that the Filley principal is able to devote the greatest portion of his time to the administration of the school is likewise of some significance. Such attention ensures that the administrative needs of the school and the students are the prime concern of the principal and not merely incidental to other duties. Such concern should provide greater supervision of the teachers, which in turn should provide better educational benefits to the student.

We are further impressed by the fact that the Filley kindergarten program is conducted for one-half day

during the entire school year while the Lewiston kindergarten program is conducted on a full-day basis during just the spring semester. In this particular case, the evidence discloses that the Filley District's kindergarten program is more conducive to the attention span of children of kindergarten age, all in the best educative interests of the student.

Likewise, while not in itself controlling, the fact does remain that Nichole was already enrolled at Filley and had made associations in the Filley District. Having both children in the same school is a factor to be considered by both the statutory board in the first instance and the court on review. Should the transfer be denied, it is possible Nichole would have to leave the Filley District and return to the Lewiston District. Social and school adjustments made by Nichole during attendance in the Filley District should not be disregarded. As we indicated at the outset, no one factor standing alone may be sufficient to establish "best educative interests of petitioners." The "best educative interests" of the children can only be determined by taking all the relevant factors into account and viewing them as a whole. When all the factors involved in this case are considered as a whole, we are compelled to reach the conclusion that indeed the best educative interests of the children would be served by permitting them to attend the Filley District. That being the case, we believe the trial court correctly concluded that the transfer of the Miller land from the Lewiston District to the Filley District was in the best educative interests of the children. The second assignment of error raised by appellants must also, therefore, be rejected.

For the foregoing reasons, then, we affirm the judgment of the District Court.

AFFIRMED.